**COMMONWEALTH of Pennsylvania**

v.

**John David WAH, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 21, 2011.
Filed March 1, 2012.

Wayne Sachs, Philadelphia, for appellant.

Christian Sondergaard, Jr., Office of the Attorney General, Norristown, for Commonwealth, appellee.

Andrea F. McKenna Office of the Attorney General, Harrisburg, for Commonwealth, appellee.

Risa V. Ferman, District Attorney, Norristown, for Commonwealth, appellee.

BEFORE: STEVENS, P.J., FORD ELLIOTT, P.J.E., and COLVILLE, J.*

OPINION BY FORD ELLIOTT, P.J.E.:

John David Wah appeals from the order of March 25, 2011, dismissing his petition brought pursuant to the PCRA.[1] We affirm.

On June 2, 2010, appellant entered a negotiated guilty plea to one count each of Medicaid fraud[2] and forgery.[3] Appellant admitted that between June 2007 and March 2008, he provided wrap-around services through an agency called Access. (Notes of testimony, 6/2/10 at 5.) During that time, he overbilled or billed for services which he did not provide in the amount of $19,603. (*Id.* at 3, 5.) As of the date of his plea, appellant had paid back $7,500, leaving an outstanding amount of $12,103. (*Id.* at 3.) In accordance with the negotiated plea, appellant was sentenced to three years' probation and restitution of $12,103. (*Id.* at 10.) Remaining charges were withdrawn. Appellant, who is a Liberian national and a resident alien, acknowledged that his guilty plea could affect his immigration status. (*Id.* at 9.)

Federal law provides that any alien convicted of an aggravated felony is removable. 8 U.S.C. § 1227(a)(2)(A)(iii). The term "aggravated felony" includes an offense involving fraud or deceit in which the loss to the victim exceeds $10,000. 8 U.S.C. § 1101(a)(43)(M)(i).

No direct appeal was filed; however, on August 30, 2010, appellant filed a counseled PCRA petition in which he alleged that plea counsel was ineffective for failing to advise him of the immigration consequences of pleading guilty to a loss amount in excess of $10,000. Appellant alleged that he is facing mandatory, automatic deportation as a result of the monetary value of the loss being above $10,000 at the time the plea was entered and sentence imposed. According to appellant, he could have avoided mandatory deportation merely by continuing the plea for several weeks, allowing him time to bring the amount of restitution below the $10,000

---

* Retired Senior Judge assigned to the Superior Court.

1. Post–Conviction Relief Act, 42 Pa.C.S.A. §§ 9541–9546.

2. 62 P.S. § 1407(a)(1).

3. 18 Pa.C.S.A. § 4101(a)(2)(3).

threshold. In fact, appellant alleged that by June 15, 2010, he had already paid an additional $2,600 into court, bringing the amount due to $9,600. Appellant states that if PCRA relief is granted, he does not wish to proceed to trial; rather, he wants to re-enter the identical plea to the same charges, but with a stipulated loss figure of less than $10,000 in order to avoid mandatory deportation.

■■■ On March 25, 2011, following Rule 907[4] notice, appellant's petition was dismissed. This timely appeal followed on April 21, 2011. Appellant complied with the PCRA court's order to file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A., and the PCRA court has filed an opinion.

> This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. *Commonwealth v. Halley*, 582 Pa. 164, 870 A.2d 795, 799 n. 2 (2005). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa.Super.2001).

*Commonwealth v. Turetsky*, 925 A.2d 876, 879 (Pa.Super.2007), *appeal denied*, 596 Pa. 707, 940 A.2d 365 (2007).

> [T]he right to an evidentiary hearing on a post-conviction petition is not absolute. *Commonwealth v. Jordan*, 772 A.2d 1011, 1014 (Pa.Super.2001). It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. *Id.* It is the responsibility of the reviewing court on appeal to examine each

issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing. *Commonwealth v. Hardcastle*, 549 Pa. 450, 454, 701 A.2d 541, 542–543 (1997).

*Id.* at 882, quoting *Commonwealth v. Khalifah*, 852 A.2d 1238, 1239–1240 (Pa.Super.2004).

> To prevail on a claim alleging counsel's ineffectiveness under the PCRA, Appellant must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness, *i.e.* there is a reasonable probability that but for the act or omission in question the outcome of the proceeding would have been different. *Commonwealth v. Kimball*, 555 Pa. 299, 724 A.2d 326, 333 (1999); *Commonwealth v. Douglas*, 537 Pa. 588, 645 A.2d 226, 230 (1994).

*Commonwealth v. Bracey*, 568 Pa. 264, 276, 795 A.2d 935, 942 (2001).

> It is clear that a criminal defendant's right to effective counsel extends to the plea process, as well as during trial. However, "[a]llegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused the defendant to enter an involuntary or unknowing plea. Where the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the

---

4. Pa.R.Crim.P., Rule 907, 42 Pa.C.S.A.

range of competence demanded of attorneys in criminal cases."

*Commonwealth v. Allen,* 833 A.2d 800, 802 (Pa.Super.2003), *appeal denied,* 580 Pa. 703, 860 A.2d 488 (2004), quoting *Commonwealth v. Hickman,* 799 A.2d 136, 141 (Pa.Super.2002) (internal citations omitted).

Appellant relies on the recently decided case of *Padilla v. Kentucky,* — U.S. —, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in which the United States Supreme Court held that counsel must inform his client whether his plea carries a risk of deportation. The *Padilla* Court rejected Kentucky state law holding that the risk of deportation concerns only collateral matters outside the scope of representation required by the Sixth Amendment, and therefore, failure to advise a defendant of possible deportation consequences is not cognizable as a claim for ineffective assistance of counsel. *Padilla* had the effect of abrogating similar case law in Pennsylvania, notably *Commonwealth v. Frometa,* 520 Pa. 552, 555 A.2d 92 (1989) (holding that deportation is a collateral consequence of a guilty plea and failure to explain it to a defendant is irrelevant to whether the guilty plea was knowing and voluntary). *See Commonwealth v. Abraham,* 996 A.2d 1090, 1092 (Pa.Super.2010), *appeal granted in part,* 607 Pa. 618, 9 A.3d 1133 (2010) (stating that, "Under *Padilla,* it is unclear if the direct/collateral analysis is still viable," and holding that counsel was obliged to warn his client of the loss of his pension rights as a direct consequence of pleading guilty).

Initially, we note that *Padilla* was handed down on March 31, 2010, and appellant entered his guilty plea and was sentenced on June 2, 2010. Therefore, appellant is entitled to the benefit of *Padilla*'s holding.[5]

An examination of the salient facts underpinning the *Padilla* holding is appropriate, because we find that they are readily distinguishable from the case *sub judice.* Jose Padilla, a Honduran native who had lived in the United States for more than 40 years, pled guilty to transportation of a large amount of marijuana, a deportable offense under 8 U.S.C. § 1227(a)(2)(B)(i). *Padilla,* 130 S.Ct. at 1477. Padilla claimed that counsel not only failed to advise him of the possibility of deportation prior to entering the plea, but also told him that he "did not have to worry about immigration status since he had been in the country so long." *Id.* at 1478. Padilla relied on counsel's erroneous advice when he pleaded guilty to the drug charges, and alleged in his post-conviction petition that he would have gone to trial had he not received incorrect advice from his attorney. *Id.*

Noting the "unique nature of deportation," the *Padilla* Court decided that, "The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 1481–1482. The Court found that, although civil in nature, "deportation is nevertheless intimately related to the criminal process" *id.* at 1481, and concluded that "The severity of deportation—'the equivalent of banishment or exile,'—only

**5.** Recently, this court determined in *Commonwealth v. Garcia,* 23 A.3d 1059 (Pa.Super.2011), that *Padilla* did not recognize a new "constitutional right" and does not apply retroactively to cases on collateral review as an exception to the timeliness requirements of the PCRA. *Garcia* held that the petitioner in that case could not rely on *Padilla* to satisfy

Subsection 9545(b)(1)(iii)'s after-recognized constitutional right exception to the one-year time limit for filing a PCRA petition. Rather, the *Garcia* court recognized that *Padilla* merely clarified and refined the scope of a criminal defendant's long-standing Sixth Amendment right to effective assistance of counsel during the guilty plea process.

underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Id.* at 1486, quoting *Delgadillo v. Carmichael,* 332 U.S. 388, 390–391, 68 S.Ct. 10, 92 L.Ed. 17 (1947) (footnote omitted). Ultimately, the Court in *Padilla* remanded the matter for a determination as to whether Padilla could demonstrate that he was prejudiced by counsel's incorrect advice. *Id.* at 1487.

In the instant case, in contrast to *Padilla,* counsel not only advised appellant that there could be deportation consequences as a result of his plea, but also suggested that he seek the advice of an immigration attorney: [6]

Q. There is one other issue I want to cover with you. You are a resident alien, are you not?

A. Yes.

Q. As such, you have possessed until recently what we call a green card, correct?

A. Yes.

Q. Have any representations been made to you as to the effect of this plea upon your immigration status by anyone involved in this case?

A. No.

Q. Have you, in fact, been advised by me to consult with an immigration attorney if you wanted to know the specific consequences of your guilty plea here today?

A. Yes.

Q. And you have done so on your own, correct?

A. Yes.

Q. Just so you understand, no part of this plea agreement is contingent upon the government taking or refraining from taking any action with respect to your immigration status. Do you understand that?

A. Yes.

Notes of testimony, 6/2/10 at 8–9.

Therefore, far from affirmatively misadvising his client "not to worry" about his immigration status, as in *Padilla,* counsel here explicitly warned appellant that there could be immigration consequences related to his guilty plea and recommended that he consult with an attorney better versed in immigration law. In fact, appellant conceded in his PCRA petition that, "Petitioner was generally aware that it was important for him to bring the figure below $10,000 as soon as possible . . .," indicating that he received specific advice regarding the significance of a loss figure exceeding $10,000. (PCRA petition, 8/30/10 at 4.)

Appellant argues that counsel's responsibility was "non-delegable" and that even a cursory examination of the relevant federal immigration statutes would have revealed that a plea to Medicaid fraud in an amount greater than $10,000 would be deemed an aggravated felony and subject appellant to automatic, mandatory deportation. (Appellant's brief at 4.) Appellant contends that it is only when the immigration consequences of the plea are not readily discernible that an attorney may discharge his duty by referring his client to another attorney who specializes in immigration law. (*Id.*)

The statute at issue in *Padilla* provides for the deportation of any alien convicted of any drug violation, other than a single offense involving possession for one's own use of 30 grams or less of marijuana. *Padilla,* 130 S.Ct. at 1483, citing 8 U.S.C. § 1227(a)(2)(B)(i). As the Court in *Padil-*

---

**6.** Indeed, as *Padilla* was handed down approximately two months earlier, counsel may have been cognizant of its holding.

*la* recognized, "The consequences of Padilla's plea could easily be determined from reading the removal statute...." *Id.* However, in acknowledging the complexity of federal immigration law, which is its own legal specialty, the Court stated:

> There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward ... a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences.

*Id.* (footnote omitted).

In fact, in Justice Alito's concurrence, he remarks that,

> Most crimes affecting immigration status are not specifically mentioned by the [Immigration and Nationality Act (INA)], but instead fall under a broad category of crimes, such as *crimes involving moral turpitude* or *aggravated felonies.* As has been widely acknowledged, determining whether a particular crime is an "aggravated felony" or a "crime involving moral turpitude [(CIMT)]" is not an easy task.

*Id.* at 1488 (brackets in original) (emphasis in original) (additional quotation marks and citations omitted). In this case, appellant was removable as an "aggravated felon" based upon his conviction of a crime involving fraud or deceit in which the loss to the victim exceeded $10,000. 8 U.S.C. § 1227(a)(2)(A)(iii); 8 U.S.C. § 1101(a)(43)(M)(i). Certainly, this matter is more complex than the statute at issue in *Padilla,* which mandates removal for virtually all controlled substances convictions. We find that counsel acted within the range of professionally competent assistance when he recommended that ap-

pellant seek the advice of an expert in immigration law if he desired to know the specific consequences of his guilty plea.

■ Furthermore, we agree with the Commonwealth and the PCRA court that appellant would be unable to demonstrate prejudice. Appellant contends that counsel should have requested a two-week continuance so that he could pay additional restitution and bring the amount outstanding under $10,000 at the time his plea was entered. However, there is no indication the Commonwealth or the court would have been receptive to such a request. (PCRA court opinion, 5/31/11 at 8.) Appellant does not seek to withdraw his plea and go to trial, only to re-plead to the same charges but with a loss figure under $10,000. The Commonwealth indicated in its memorandum in opposition to PCRA relief that it would not have entertained such a scheme. (*Id.*)

In addition, even if counsel had requested and been granted a continuance so that appellant could make additional payments before entering his plea, it is unlikely that the outcome would have been any different, *i.e.,* that federal authorities would not have initiated removal proceedings. The amount of the loss for purposes of the INA is not circumscribed by the amount of restitution due at the time a defendant enters his plea and is sentenced. In this case, it is not disputed that appellant defrauded Access Services in the aggregate amount of $19,603. This is well above the $10,000 statutory limit. Even if appellant had paid the entire amount prior to entering his plea, it would not change the fact that he had caused a loss to the victim in excess of $10,000.

In *Munroe v. Ashcroft,* 353 F.3d 225 (3rd Cir.2003), the New Jersey state court reduced the amount of restitution the defendant was required to pay from $11,522 to $9,999 in an attempt to alter the effect

of the conviction for immigration purposes. *Id.* at 226–227. The Board of Immigration Appeals ("BIA") refused to reconsider its prior decision that Munroe was subject to removal as an aggravated felon, finding that he had pled guilty to a fraud offense involving a loss of more than $10,000 and that it was irrelevant that his ordered restitution was later reduced. *Id.* at 227. Munroe filed a petition for writ of *habeas corpus*, which was denied, and Munroe appealed.

Judge, now Justice, Alito, writing for the Third Circuit Court of Appeals, affirmed, agreeing with the BIA that the reduction in the amount of restitution was irrelevant where the amount of loss involved was greater than $10,000: "The indictment alleged that the loss exceeded this amount, and Munroe does not claim that, when he pled guilty, he admitted to only a lesser loss. Nor is there any suggestion that the Superior Court ever found that the amount of the loss was less than $10,000." *Id.*

> The amount of restitution ordered as a result of a conviction may be helpful to a court's inquiry into the amount of loss to the victim if the plea agreement or the indictment is unclear as to the loss suffered. But when the amount of restitution ordered is not based on a finding as to the amount of the loss but is instead intended solely to affect the defendant's immigration status, the amount of restitution is not controlling.

*Id.*

Therefore, federal immigration authorities are not bound by whatever restitution figure the court comes up with at the time of appellant's sentencing. It is clear from the record, and appellant admitted at his guilty plea, that he bilked Medicaid out of nearly $20,000. It is wholly irrelevant how much of this amount was re-paid by the time he entered his plea. The loss to the victim here for purposes of the INA is $19,603. Nor should appellant be permitted to skirt federal immigration law by engaging in some sort of scheme to withdraw his guilty plea and re-plead to the identical charges but with a restitution amount less than $10,000. This is not only contrary to the spirit of the PCRA but also raises federal preemption issues. In fact, as the court observed in *Munroe, supra,*

> there is authority for the proposition that "[w]hen a court vacates an otherwise final and valid conviction on equitable grounds merely to avoid the immigration-law consequences of the conviction, it usurps Congress's plenary power to set the terms and conditions of American citizenship and the executive's discretion to administer the immigration laws."

*Id.* at 227–228, quoting *Renteria–Gonzalez v. INS,* 322 F.3d 804, 812 (5th Cir.2003) (citation omitted).

For the foregoing reasons, the PCRA court did not err in dismissing appellant's petition without a hearing. Appellant is clearly not entitled to relief on the grounds alleged. Therefore, we will affirm the order dismissing appellant's petition.

Order affirmed.