**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-3111
_____

UNITED STATES OF AMERICA

v.

COSMO FAZIO,
Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 2-09-cr-00325-006)
District Judge:  Honorable Terrence F. McVerry

Argued:  October 1, 2014
_____

Before:  AMBRO, CHAGARES, and VANASKIE, <u>Circuit
Judges</u>.

(Filed: August 4, 2015)


Almon S. Burke, Jr., Esq.   (Argued)
U.S. Steel Tower
600 Grant Street, Suite 660
Pittsburgh, PA 15219

Mark A. Goldstein, Esq.    (Argued)
Goldstein & Associates, LLC
1125 Penn Avenue, 3d Floor
Pittsburgh, PA 15222
        *Counsel for Appellant*

Michael L. Ivory, Esq.     (Argued)
Rebecca R. Haywood, Esq.
Office of United States Attorney
700 Grant Street, Suite 4000
Pittsburgh, PA 15219
        *Counsel for Appellee*

_____

OPINION

_____

CHAGARES, <u>Circuit Judge</u>.

Cosmo Fazio appeals the District Court's denial of his motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. In his motion, Fazio asserted that his plea counsel was ineffective because he failed to warn Fazio properly of the immigration consequences of his guilty plea, as required by the Supreme Court in <u>Padilla v. Kentucky</u>, 559 U.S. 356 (2010). Notwithstanding plea counsel's purported error, the plea agreement – which plea counsel reviewed with Fazio thoroughly – contained a waiver of collateral-attack rights and, <u>inter</u> <u>alia</u>, advised of the possibility that Fazio could face automatic removal from the United States as a result of the plea. The District Court conducted a detailed colloquy, specifically reviewing these provisions of the plea agreement with Fazio and questioning him regarding his awareness that a consequence of his plea could be automatic removal. This case requires us to determine the effect of the plea agreement's provisions and the District Court's colloquy on Fazio's ineffective assistance claim and whether the collateral-attack waiver is enforceable. For the reasons that follow, we will affirm the District Court's denial of Fazio's motion.

I.

On December 9, 2009, a federal grand jury sitting in the Western District of Pennsylvania returned an eight-count indictment against Fazio and twelve co-defendants for their alleged involvement in a cocaine distribution network. Fazio was charged only in Count One of the indictment with

2

conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. On June 3, 2011, Fazio pleaded guilty to the lesser-included offense of conspiring to distribute more than 200 grams but fewer than 300 grams of cocaine. Supplemental Appendix ("Supp. App.") 1–2. Fazio's plea agreement contained the following provision:

> Cosmo Fazio waives the right to take a direct appeal from his conviction or sentence under 28 U.S.C. § 1291 or 18 U.S.C. § 3742, subject to the following exceptions:
>
> (a) If the United States appeals from the sentence, Cosmo Fazio may take a direct appeal from the sentence.
>
> (b) If (1) the sentence exceeds the applicable statutory limits set forth in the United States Code, or (2) the sentence unreasonably exceeds the guideline range determined by the Court under the Sentencing Guidelines, Cosmo Fazio may take a direct appeal from the sentence.
>
> Cosmo Fazio further waives the right to file a motion to vacate sentence, under 28 U.S.C. § 2255, attacking his conviction or sentence, and the right to file any other collateral proceeding attacking his conviction or sentence.

Supp. App. 3–4. The plea agreement further stated:

> Cosmo Fazio recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses. Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his own attorney or the district court, can predict to a certainty the effect of his conviction on his immigration

3

status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

Supp. App. 3. Fazio was born and raised in Bari, Italy and immigrated to the United States in 1992, at the age of twenty-three. Supp. App. 27. He is a permanent resident alien. Appendix ("App.") 50.

At Fazio's plea hearing, the District Court conducted a colloquy in open court. It specifically questioned Fazio to make sure that he understood the appellate waiver provision of his plea agreement:

> THE COURT: Do you also understand ordinarily you or the government may have the right to appeal any sentence that I impose, however, I note in Paragraph A13 of your plea agreement, you and the government agreed that you would waive, again, that's give up, your right to take a direct appeal from your conviction . . .
>
> Further, you've also waived the right to file a motion to vacate sentence under 28 United States Code, Section 2255 and the right to file any other collateral proceeding attacking your conviction or sentence, do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Waivers of appeal are generally permissible if entered into knowingly and voluntarily unless they work a miscarriage of justice. I have examined the record in this case, observed you and heard your responses to my questions in open court, and I find no basis for invalidating your waiver in this case.

4

App. 26–28. The District Court also questioned Fazio regarding the potential immigration consequences of his guilty plea:

> THE COURT: Mr. Fazio, in addition to the possible penalties of which I have advised you, because you are not a United States citizen, you will also face a risk of removal from the United States after you have served any sentence imposed by this Court.
>
> Under federal law, a broad range of crimes are removable offenses, including the offense to which you are pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however. Do you understand that no one, including your attorney or me or the government's attorney can predict to a certainty the effect of your conviction on your immigration status?
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now knowing this, do you nevertheless want to plead guilty regardless of any immigration consequences that your plea of guilty may entail, even if the consequence is your automatic removal from the United States?
>
> THE DEFENDANT: Yes.

App. 22–23. Fazio informed the District Court that he understood the nature of the offense to which he was pleading guilty. App. 16, 28. He also confirmed that he had reviewed the terms of the plea agreement with his attorney and understood those terms. App. 17, 35. The District Court found that Fazio was competent to plead guilty and that he was doing so knowingly and voluntarily. App. 44–45. Accordingly, the court accepted his plea.

Fazio was represented by counsel at the time of his guilty plea. His counsel was aware that Fazio was not an

American citizen. App. 99. His counsel testified that, prior to the plea hearing, he informed Fazio that there

> could be immigration consequences. However, it was my opinion that he would be entitled to a hearing. And given what I had learned of his family and friends and background, I was confident that with competent immigration counsel, being unaware of the law, that he stood a good chance of not being deported. I certainly told him it was a possibility, however.

App. 105. In addition, he testified that he reviewed the plea agreement with Fazio "line by line," including the provision regarding immigration consequences. App. 106. After reviewing that provision, he told Fazio that "there was certainly a chance he could be deported, but it was my opinion he would not be." App. 107.

After Fazio pleaded guilty, his wife became concerned about the possible immigration consequences of his conviction and contacted a law firm specializing in immigration law. App. 54. On June 13, 2011, ten days after the entry of his guilty plea, Fazio, his wife, a family friend, and his plea counsel met with immigration attorneys Mark Goldstein and Andrew Wood. App. 55. During that meeting, Goldstein stated that it was certain that Fazio would be deported because he had pleaded guilty to an aggravated felony. App. 56. Goldstein, Fazio, and Fazio's wife discussed the possibility that Fazio might request a change to his plea agreement to attempt to avoid this consequence. Fazio's plea counsel expressed that he had been unaware of the immigration consequences of the plea, that he had made a mistake, and that he would help Fazio rectify the situation. App. 56.

In July 2011, Fazio terminated his plea counsel and retained new counsel. App. 57–58. On November 1, 2011, Fazio moved to withdraw his guilty plea pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). Supp. App. 35–36. He argued that he was denied his Sixth Amendment right to effective assistance of counsel because his plea counsel failed to advise him properly regarding the immigration

6

consequences of his plea, as required by the Supreme Court in Padilla v. Kentucky. Supp. App. 38. At the evidentiary hearing, Fazio's plea counsel testified that he told Fazio that he had "an absolute right to at least a hearing," and that he "thought [Fazio] had a greater likelihood of staying in the country than being deported." App. 117. Goldstein testified that the consequence of Fazio pleading guilty to an aggravated felony was that he would have no defense to deportation. App. 76. During cross-examination, Goldstein conceded that it was possible for someone who was convicted of the identical crime as Fazio to remain in the country if the person was provided with an S visa, given to some non-citizens who provide assistance to law enforcement, App. 83–86, or if there was a change in law, App. 91–92. On December 27, 2011, the District Court denied Fazio's motion to withdraw his guilty plea, finding that his attorney did not violate the standard in Padilla, and that even if he did, the Court's plea colloquy cured any error. Supp. App. 24, 40–41.

Following his sentencing, Fazio filed a direct appeal with this Court. The Government moved to enforce the appellate waiver in Fazio's plea agreement. We summarily granted the Government's motion to enforce the appellate waiver and affirmed the District Court's judgment.

On April 9, 2013, Fazio was issued a Form I-862, Notice to Appear, by the Immigration and Customs Enforcement of the United States Department of Homeland Security, placing him in removal proceedings. App. 120.

Fazio filed a motion under 28 U.S.C. § 2255 on April 11, 2013, again asserting that his plea counsel violated Padilla. The Government moved to enforce the collateral-attack waiver in Fazio's plea agreement. The District Court granted the Government's motion and denied Fazio's § 2255 motion. App. 7.

Fazio filed a timely notice of appeal. On October 10, 2013, this Court granted a certificate of appealability and directed the parties to address the following issues: (1) whether the District Court erred in enforcing Fazio's collateral-attack waiver; and (2) whether Fazio was entitled to relief on his ineffective assistance claim. App. 8.

## II.

The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 2255(d), and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291. We review the validity of a collateral-attack waiver de novo. United States v. Khattak, 273 F.3d 557, 560 (3d Cir. 2001). We exercise plenary review over a district court's legal conclusions in ruling on a habeas corpus petition and apply a clearly erroneous standard in reviewing its factual findings. Cradle v. U.S. ex rel. Miner, 290 F.3d 536, 538 (3d Cir. 2002).

## III.

The threshold issue in this appeal is whether the District Court erred in enforcing the collateral-attack waiver in Fazio's plea agreement. "A criminal defendant may knowingly and voluntarily waive many of the most fundamental protections afforded by the Constitution." United States v. Mezzanatto, 513 U.S. 196, 201 (1995). Further, a defendant may waive the statutory right to appeal if he does so with knowledge of the nature and consequences of the waiver. Khattak, 273 F.3d at 561. Thus, we will enforce appellate or collateral-attack waivers when they are entered into knowingly and voluntarily and their enforcement does not work a miscarriage of justice. See United States v. Erwin, 765 F.3d 219, 225 (3d Cir. 2014); Khattak, 273 F.3d at 561 ("[W]aivers of appeals, if entered into knowingly and voluntarily, are valid."). Fazio argues that the collateral-attack waiver in his plea agreement was not made knowingly and voluntarily and that enforcement of the collateral-attack waiver would constitute a miscarriage of justice.[1]

---

[1] Fazio advances an additional argument that we should not enforce collateral-attack waivers because they are contrary to public policy and procedurally unconscionable as a result of the Government's excessive bargaining power during plea negotiations. We have previously noted the "benefits of such waivers to the defendant, government and court system," and thus "have refused to find waivers of appeal rights violative of public policy." United States v. Mabry, 536 F.3d 231, 237

A.

We consider first whether Fazio entered into the plea agreement knowingly and voluntarily. His plea agreement clearly includes a broad appellate waiver that applies to both direct appeal and collateral-attack rights. Counsel explained the waiver to Fazio and he signed the agreement, acknowledging that he understood its terms. Further, the District Court asked Fazio at the plea colloquy whether he had been coerced into entering the plea agreement and discussed its terms with him. The District Court ultimately found that Fazio was competent to plead guilty and did so knowing the consequences of his plea. We conclude that it did not err in finding that Fazio entered into the plea agreement knowingly and voluntarily.

B.

As Fazio's plea agreement was knowing and voluntary, the "appellate waiver must therefore be enforced unless we identify the unusual circumstance of an error amounting to a miscarriage of justice in his sentence." Erwin, 765 F.3d at 226 (quotation marks omitted). This determination depends on factors such as

> the clarity of the error, its gravity, its character (e.g., whether it concerns a fact issue, a sentencing guideline, or a statutory maximum), the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.

Id. (quotation marks omitted).

Fazio argues that enforcement of the waiver would work a miscarriage of justice because he received ineffective assistance of counsel. In United States v. Mabry, we noted

---

(3d Cir. 2008) (citing Khattak, 273 F.3d at 561). We therefore reject Fazio's arguments.

that a miscarriage of justice may exist in a case "raising allegations that counsel was ineffective or coercive in negotiating the very plea agreement that contained the waiver." 536 F.3d at 243; cf. United States v. Monzon, 359 F.3d 110, 118–19 (2d Cir. 2004) ("The appeal waiver would be unenforceable if the record . . . revealed that the claim that the waiver was the result of ineffective assistance of counsel was meritorious. But if the record on appeal shows that that claim lacks merit, the appeal should be dismissed because the waiver should be enforced.").

We analyze Fazio's claim of ineffective assistance of counsel under the Supreme Court's two-prong test from Strickland v. Washington, 466 U.S. 668 (1984). Under the first prong of the Strickland test, Fazio must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. Under the second, or "prejudice" prong, he must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. In the context of a guilty plea, the prejudice prong of the test requires a showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). We may consider the Strickland prongs in either order, Strickland, 466 U.S. at 670, and, indeed, we have noted that it is often practical to consider the prejudice prong first. See United States v. Booth, 432 F.3d 542, 546 (3d Cir. 2005).

Fazio contends that his plea counsel was ineffective because he did not satisfy the Sixth Amendment requirements for counsel set forth in Padilla v. Kentucky. He faults his plea counsel for advising him only that he would face a possibility of deportation when in fact his plea would result in almost certain deportation. Fazio also states that, had he been provided with the proper legal advice, he would not have pleaded guilty. Fazio Br. 54.

In Padilla, defense counsel failed to advise his non-citizen client of the immigration consequences of pleading guilty. Counsel specifically told the defendant that "he did not have to worry about immigration status since he had been in the country so long." 559 U.S. at 359 (quotation marks omitted). The Supreme Court noted that there are "numerous situations in which the deportation consequences of a particular plea are unclear or uncertain" and that, in such situations, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id. at 369. However, "when the deportation consequence is truly clear," as it was in Padilla's case because he had committed a removable offense, "the duty to give correct advice is equally clear." Id. Padilla was entitled to be "advised . . . that his conviction for drug distribution made him subject to automatic deportation," id. at 360, and his defense counsel's failure to meet this requirement was constitutionally deficient representation under the first prong of Strickland. Id.

Following Padilla, we decided, in United States v. Orocio, that counsel was constitutionally deficient for failing to advise a non-citizen defendant that his guilty plea carried a risk of deportation. 645 F.3d 630, 642–43 (3d Cir. 2011), abrogated on other grounds by Chaidez v. United States, 133 S. Ct. 1103 (2013). Like the attorney in Padilla, defense counsel in Orocio completely failed to advise his client of the "near-certain removal consequence of pleading guilty to a controlled substance offense." Id. at 642. And like the attorney in Padilla, defense counsel "affirmatively misled" his client, telling him that "he did not have to worry about immigration status." Id. at 641 (quotation marks omitted). We held that "the failure of defense counsel to warn a defendant that a plea would make the defendant eligible for removal is a constitutional defect in representation that satisfies the first prong of the Strickland test." Id. at 641.

Unlike defense counsel in Padilla and Orocio, Fazio's plea counsel did inform him that there "could be immigration consequences," App. 105, to pleading guilty. He conducted a "careful and thorough" review of the plea agreement with Fazio, including a review of the provision explaining the possible immigration consequences of Fazio's plea. Yet plea

11

counsel did not inform Fazio that the plea made him subject to automatic deportation, as is required under Padilla in cases like Fazio's where the immigration consequences of a guilty plea are clear.[2]  While Fazio's plea counsel stated that it would be more likely than not that Fazio could remain in the United States, it is clear that Fazio was subject to automatic removal as a result of his plea.

However, we need not reach the issue of whether Fazio's plea counsel's advice constituted deficient performance under Strickland.  Any error in that advice was remedied by the District Court's in-depth colloquy and the language of the plea agreement itself, and so Fazio was not prejudiced.[3]

In United States v. Shedrick, the defendant's plea agreement stated that his maximum potential sentence was ten years of imprisonment and that his actual sentence would be left to the discretion of the court after both he and the Government had an opportunity to argue "the applicability of any other provision of the Sentencing Guidelines, including . . . adjustments and departures."  493 F.3d 292, 295 (3d Cir. 2007). At the plea colloquy, the district court repeated that

---

[2] In Orocio, counsel told the defendant that he did not have to worry about immigration consequences at all.  We therefore did not need to reach the distinction drawn in Padilla between what is required in cases where the immigration consequences of a plea are clear (accurate advice) and what is required in cases where those consequences are unclear (advice that there is a risk of such consequences).  Here, the Government does not contest that it was clear that Fazio's plea made him subject to automatic deportation.  Instead, the Government emphasizes that there was some possibility that Fazio's guilty plea would not actually lead to his removal due to an intervening change in law or the grant of an S visa.

[3] Fazio's claim of prejudice is further undermined by the fact that he did not testify at the evidentiary hearing in the District Court.  In the absence of such testimony, there is little affirmative evidence in the record that he would have rejected the plea had his attorney fully informed him of its immigration consequences.

Shedrick's maximum sentence under the plea agreement was ten years and that his actual sentence would be determined by the court. Id. at 295–96. At sentencing, the court ultimately granted the Government's request for a four-level enhancement and eight-level departure due to certain characteristics of Shedrick's offense. Id. at 297. Shedrick received a sentence of 96 months of imprisonment followed by three years of supervised release. Id.

He later filed a motion pursuant to 28 U.S.C. § 2255, alleging ineffective assistance of counsel during the plea process for defense counsel's "failure to advise him about a potential enhancement or upward departure at sentencing." Id. at 299. We noted that "all that the law requires is that the defendant be informed of his/her exposure in pleading guilty," and that it "does not require that a defendant be given a reasonably accurate 'best guess' as to what his/her actual sentence will be." Id. at 299 (quoting United States v. Mustafa, 238 F.3d 485, 492 n.5 (3d Cir. 2001)). Shedrick was therefore entitled only to know that his maximum possible sentence was ten years. We explained that "an erroneous sentencing prediction by counsel is not ineffective assistance of counsel where . . . an adequate plea hearing was conducted." Id. We held that any erroneous sentencing information allegedly provided by counsel was therefore "corrected by the written plea agreement and the detailed in-court plea colloquy," both of which made clear that his maximum possible sentence was ten years. Id. at 300. Shedrick was entitled to know his exposure in pleading guilty and he received that information, at least in the plea colloquy and plea agreement, if not also from defense counsel.

Fazio was entitled to be "advised . . . that his conviction for drug distribution made him subject to automatic deportation." Padilla, 559 U.S. at 360. This risk was made clear in both his plea agreement and during the plea colloquy. The plea agreement stated that Fazio wanted "to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States." Supp. App. 3. During the plea colloquy, the District Court inquired of Fazio that, "knowing this [risk], do you nevertheless want to plead guilty regardless of any immigration consequences that your plea of

guilty may entail, even if the consequence is your automatic removal from the United States?" App. 23. Fazio responded affirmatively.

Like in <u>Shedrick</u>, any possible error in plea counsel's advice to Fazio was cured by the plea agreement and at the plea colloquy. Both made clear that Fazio was willing to plead guilty even if that plea would lead to automatic deportation, fulfilling the requirement that Fazio be informed of this risk under <u>Padilla</u>. <u>Cf.</u> Fed. R. Crim. P. 11(b)(1)(O) (requiring the court at a plea colloquy to inform and determine whether a defendant understands "that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future"). We hold that Fazio did not suffer prejudice as a result of any deficient performance by his counsel during the plea process and, therefore, Fazio is not entitled to relief on his ineffective-assistance-of-counsel claim. We further hold that enforcement of the collateral-attack waiver in Fazio's plea agreement would not constitute a miscarriage of justice. We perceive no error in the District Court's enforcement of that waiver.

IV.

For the reasons stated above, we will affirm the judgment of the District Court.