J-S23033-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| VERNON ANDREWS | : | |
| | : | |
| Appellant | : | |
| | : | No. 805 EDA 2015 |

Appeal from the PCRA Order March 6, 2015
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0013540-2011

BEFORE: PANELLA, OTT, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED JUNE 03, 2016**

Appellant, Vernon Andrews, appeals from the order dismissing his first Post Conviction Relief Act[1] ("PCRA") petition. He primarily contends that a single sentence—"I know that if I am not a United States citizen, it is possible I may be deported if I plead guilty to the crime(s) charged against me"—in a written guilty plea colloquy is insufficient notice under **Padilla v. Kentucky**, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010), that he could be deported. We affirm in part, vacate in part, and remand to have the PCRA court hold an evidentiary hearing clarifying plea counsel's advice regarding immigration consequences prior to or at the hearing.

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

J-S23033-16

We adopt the facts and procedural history set forth in the PCRA court's opinion:

**FACTUAL HISTORY**

At approximately 12:15 pm on April 12, 2011, a team of officers from Homeland Security Investigation Task Force and an officer from the Philadelphia Police Department Narcotics Field Unit conducted undercover surveillance on the 5000 block of Aspen Street in Philadelphia. The officers observed as someone parked a blue Volvo outside 5025 Aspen Street, and the driver removed a heavy plastic trash bag from the trunk of the car and took it inside the residence. About one hour later [Appellant], Vernon Andrews, arrived in his Nissan Altima, went to the residence at 5025 Aspen Street and was handed a trash bag similar to the one previously seen being taken into the house, but seemingly lighter. Next, [Appellant] loaded the trash bag into his trunk and drove away. When the police attempted to apprehend [Appellant], he exited his car and fled.

The officers obtained a search warrant for [Appellant's] car after K-9 dogs at the scene exhibited a positive reaction for drugs. Inside the car, officers found a large green plastic trash bag filled with five (5) large clear Ziploc bags containing a total of 4.86 pounds of marijuana. [Appellant's] car registration and insurance card were also found inside the car[.]

Later that night, the officers obtained and executed a search warrant for the property at 5025 Aspen Street. There, the officers recovered six (6) large marijuana-filled Ziploc bags weighing a total of more than 35 pounds, along with bale wrappers and two (2) boxes of freezer bags. [Appellant's] co-conspirator, Marlon Carter, was then arrested inside the residence and identified as the man who brought the trash bag into the house earlier that day. . . .

**PROCEDURAL HISTORY**

- 2 -

> [Appellant] pled guilty before the Honorable Kenneth Powell, Jr. on September 12, 2012 to Possession With the Intent to Deliver (35 Pa. C.S. §780-113), an ungraded felony; and Criminal Conspiracy to Commit Possession With Intent to Deliver (18 Pa. C.S. §903), also an ungraded felony. [That same day, Appellant] was sentenced on count one, Possession With Intent to Deliver, to 11½ to 23 months['] incarceration, and three (3) years of consecutive probation. [Appellant] was sentenced on count two, Criminal Conspiracy to Commit Possession With Intent to Deliver, 2 to 11½ to 23 months['] incarceration, and three (3) years of consecutive probation, concurrent to the sentence imposed on count one.

**See** PCRA Ct. Op., 8/3/15, at 1-3 (citations and quotation marks omitted). We add that the court imposed the negotiated aggregate sentence of eleven-and-one-half to twenty-three months' imprisonment, followed by three years' probation. N.T. Guilty Plea & Sentencing Hr'g, 9/12/12, at 15-16.

At the combined guilty plea and sentencing hearing, the court also discussed the written guilty plea colloquy prior to sentencing. Counsel stated he reviewed the colloquy with Appellant, and Appellant confirmed he reviewed the colloquy with counsel and had no questions. **Id.** at 2-3. Prior to sentencing, Appellant again acknowledged reviewing the colloquy with counsel and understood the contents, **id.** at 6-7, which included the following statement in the middle of page three:

**RISK OF DEPORTATION (*If an Alien*)**

I know that if I am not a United states citizen, it is possible I may be deported if I plead guilty to the crime(s) charged against me.

- 3 -

Guilty Plea Colloquy, 9/12/12, at 3 (emphasis in original).[2]  At the bottom of page three, Appellant signed his name below the phrase "**I HAVE READ ALL OF THE ABOVE, OR MY LAWYER READ IT TO ME.  I UNDERSTAND IT. MY ANSWERS ARE ALL TRUE AND CORRECT.**"  *Id.* (emphasis in original).

At the combined guilty plea and sentencing hearing, the following exchange transpired after the court accepted Appellant's guilty plea but before the court imposed sentence:

> [Appellant's counsel]: . . . [Appellant] was arrested on October 19th of 2011.  He has been in custody since that date.  So with credit for time served, he is about 25 days from being paroled and --
>
> The court: So re-entry isn't an issue as well?

---

[2] The federal equivalent is lengthier:

> [The defendant] recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States.  Under federal law, a broad range of crimes are removable offenses.  Removal and other immigration consequences are the subject of a separate proceeding, however, and the defendant understands that no one, including his own attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

*United States v. Fazio*, 795 F.3d 421, 423 (3d Cir. 2015).

> [Appellant's counsel]: Right. He also has an immigration detainer, so at the end of his sentence -- I'm saying 25 days. It's not exactly that. But they'll be taking him from there to one of to [sic] counties where they have space, and he will deal with the immigration matter.
>
> The court: Okay. . . .

*Id.* at 14-15. Appellant did not file a post-sentence motion. Appellant was paroled on October 25, 2012.

On January 18, 2013, the court docketed Appellant's *pro se* PCRA petition. Attached to the petition is an exhibit, specifically page three of a U.S. Department of Homeland Security Form I862. The form specifies that Appellant was convicted of the instant offense, and was also convicted on May 13, 2009, of possession with intent to deliver 208.4 grams of marijuana; he was sentenced to two years' probation. Ex. 1 to Mot. for Post Conviction Collateral Relief, 1/18/13.

Counsel was appointed on December 3, 2013,[3] and filed what was essentially an amended PCRA petition on September 1, 2014. Following a February 2, 2015[4] order that we construe as a Pa.R.Crim.P. 907 notice,[5] the

---

[3] The record does not reveal the reason for the delay.

[4] The lapse of time is unexplained.

[5] Confusingly, the order denied Appellant's PCRA petition but stated it mailed a Rule 907 notice and continued the matter for a formal dismissal. Order, 2/12/15; *see generally* Pa.R.Crim.P. 907(1) (stating court should give notice of intent to dismiss, followed by actual order of dismissal).

court formally dismissed Appellant's PCRA petition on March 6, 2015.[6]

Appellant timely appealed and timely filed a court-ordered Pa.R.A.P. 1925(b)

statement.

Appellant raises the following issues:

> The Post-Conviction Relief Act Court erred in finding that trial counsel was effective despite the lack of evidence that [A]ppellant had been sufficiently advised of the immigration consequences of his guilty plea under ***Padilla v. Kentucky***, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

> The Post-Conviction Relief Act Court erred in not finding that trial counsel was ineffective for failing to pursue suppression issues.

Appellant's Brief at 4.

For his first issue, Appellant claims plea counsel was ineffective

because counsel failed to discuss the immigration consequences. ***Id.*** at 15.

Appellant asserts that his possession with intent to distribute ("PWID")

conviction is one of the enumerated crimes in 8 U.S.C. § 1227(a)(2)(B)(i)[7]

that—according to Appellant—mandate deportation. ***Id.*** He contends his

counsel should have advised him that a guilty plea carried a substantial risk

of deportation but counsel only mentioned he had an immigration detainer

after the court accepted his plea. ***Id.*** at 15-16. Appellant notes that where

the immigration consequences are unclear, counsel "need only advise a

---

[6] The order is not in the certified record.

[7] We reproduce the statute, ***infra***.

client that there may be consequences." *Id.* at 16. In his case, however, Appellant asserts that PWID unambiguously calls for deportation and thus plea counsel's failure to advise lacked a reasonable basis. *Id.* at 16-17.

In support of his argument, Appellant distinguishes three cases: ***Commonwealth v. Escobar***, 70 A.3d 838 (Pa. Super. 2013); ***Commonwealth v. McDermitt***, 66 A.3d 810 (Pa. Super. 2013); and ***Commonwealth v. Wah***, 42 A.3d 335 (Pa. Super. 2012). Unlike counsel in ***Escobar***, Appellant alleges his plea counsel did not apprise him prior to or during the plea hearing that he could be deported. Appellant's Brief at 20. A single sentence in a written guilty plea colloquy, Appellant insists, is not advice of counsel. *Id.* at 21. With respect to ***McDermitt***, Appellant contends the defendant was already undergoing deportation and thus it was unnecessary for counsel to inform the defendant. *Id.* at 19. Unlike the ***McDermitt*** defendant, Appellant only knew about an immigration detainer and thus claims an evidentiary hearing was necessary to obtain further information, specifically "what [he] knew at the time of the plea, or from whom he may have gained that information." *Id.* Finally, Appellant emphasizes that the defendant's counsel in ***Wah*** questioned the defendant extensively about his alien status and immigration consequences during the colloquy. Unlike ***Wah***, Appellant states the only "advice" he received was one sentence in a multi-page guilty plea colloquy. *Id.* at 17-18.

Consequently, Appellant asserts that his guilty plea was unlawfully induced and he would have elected to go to trial. We vacate and remand.

"On appeal from the denial of PCRA relief, our standard and scope of review is limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Abu-Jamal*, 941 A.2d 1263, 1267 (Pa. 2008) (citation omitted).

> [C]ounsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) [the petitioner] was prejudiced by counsel's action or omission. To demonstrate prejudice, [the petitioner] must prove that a reasonable probability of acquittal existed but for the action or omission of trial counsel. A claim of ineffective assistance of counsel will fail if the petitioner does not meet any of the three prongs. Further, a PCRA petitioner must exhibit a concerted effort to develop his ineffectiveness claim and may not rely on boilerplate allegations of ineffectiveness.

*Commonwealth v. Perry*, 959 A.2d 932, 936 (Pa. Super. 2008) (punctuation and citations omitted).

"As a general rule, a lawyer should not be held ineffective without first having an opportunity to address the accusation in some fashion." *Commonwealth v. Colavita*, 993 A.2d 874, 895 (Pa. 2010) (resolving ineffectiveness claim with respect to trial strategy).[8] Our Supreme Court

---

[8] The *Colavita* Court reviewed a Superior Court holding that trial counsel was *per se* ineffective without ascertaining the reasoning for counsel's action. *Colavita*, 993 A.3d at 895. Our Supreme Court held this Court

has made "clear this Court's strong preference that counsel be heard from before being found ineffective." *Id.* "The ultimate focus of an ineffectiveness inquiry is always upon counsel, and not upon an alleged deficiency in the abstract." *Id.*

In *Escobar*, our Court examined whether counsel was required to inform the defendant that he would be deported for PWID. The *Escobar* Count recounted:

> Prior to the plea, [the defendant's] counsel informed him it was "likely and possible" that deportation proceedings would be initiated against him. Also, [the defendant] signed a written plea colloquy containing two entries indicating [he] understood deportation was possible. Additionally, counsel's PCRA testimony would eventually indicate counsel advised [the defendant], before he pled guilty, that he faced a substantial deportation risk.

*Escobar*, 70 A.3d at 840 (citation omitted).

The PCRA court granted the defendant relief because it believed deportation would actually result from his plea; the court reasoned

> that Section 1227(a)(2)(B)(i)[9] made it clear that [the defendant's] PWID conviction would necessarily render him

---

erred by "finding counsel ineffective based upon a theory not presented to the PCRA court or on appeal." *Id.* at 898.

[9] 8 U.S.C. § 1227(a)(2)(B)(i). The statute states:

> Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single

deportable, [and thus,] the court reasoned counsel's advice was not sufficiently definite.  That is, the PCRA court determined that, while counsel did advise [the defendant] about the risk of deportation to some extent, the advice was inadequate because it did not state with certainty that [the defendant] would be deported.

\* \* \*

The PCRA court essentially interpreted the words "the duty to give correct advice is equally clear" to mean that, because the instant statute clearly made [the defendant] deportable by virtue of his drug conviction, counsel was required to tell [the defendant] that he would, in fact, be deported.

*Id.* at 840-41.

The Superior Court reversed the PCRA court's grant of relief, reasoning as follows:

We do not agree that giving "correct" advice necessarily means counsel, when advising [the defendant] about his deportation risk, needed to tell [the defendant] he definitely would be deported.  It is true that 8 U.S.C. § 1227(a)(2)(B)(i) does lead to the conclusion that [the defendant's] PWID conviction certainly made him **deportable**.  However, whether the U.S. Attorney General and/or other personnel would necessarily take all the steps needed to institute and carry out [the defendant's] actual deportation was not an absolute certainty when he pled. Given that [the defendant] did know deportation **was possible**, given that counsel advised him there was a substantial risk of deportation, and given that counsel told [the defendant] it was likely there would be deportation

_____

offense involving possession for one's own use of 30 grams or less of marijuana, **is deportable**.

*Id.* (emphasis added).

- 10 -

proceedings instituted against him, we find counsel's advice was, in fact, correct.

* * *

In reaching our result, we are mindful that the **Padilla** court specifically considered 8 U.S.C. § 1227(a)(2)(B), the same immigration/deportation statute at issue in the present case. When it did so, the court concluded that the statute clearly made Padilla "**eligible** for deportation" and that "his deportation was **presumptively** mandatory." **Padilla**, 130 S. Ct. at 1483 (emphasis added). These remarks by the court were consonant with the terms of the statute indicating most drug convictions render a defendant **deportable**. We do not read the statute or the court's words as announcing a guarantee that actual deportation proceedings are a certainty such that counsel must advise a defendant to that effect.

*Id.* at 841 (second emphasis added); *see McDermitt*, 66 A.3d at 814.

In **McDermitt**, the defendant argued:

that his plea was involuntary because counsel ineffectively gave him inadequate advice as to his deportation risk, informing [him] that his conviction rendered him merely "deportable." According to [the defendant], counsel needed to inform him not just that his conviction carried a risk of deportation, but that he actually would be deported.

*McDermitt*, 66 A.3d at 814.

The **McDermitt** Court rejected that argument: "Clearly, **Padilla** requires counsel to inform a defendant as to a risk of deportation, not as to its certainty." *Id.* The Court also observed that "[m]oreover, **even if Padilla** required such information, it was not necessary in this case. At the time of his plea, [the defendant] was already undergoing deportation and was well aware that he would be deported." *Id.* (emphasis added). The

- 11 -

*McDermitt* Court thus affirmed the dismissal of the defendant's PCRA petition.

Lastly, in *Wah*, the defendant contended "plea counsel was ineffective for failing to advise him of the immigration consequences of pleading guilty to a loss amount in excess of $10,000." *Wah*, 42 A.3d at 337. The defendant claimed that he faced automatic deportation because the amount of restitution exceeded $10,000. *Id.* If plea counsel had continued the case for several weeks, the defendant asserted his interim restitution payments would have brought the amount owed below the automatic deportation threshold of $10,000. *Id.* at 337-38.

The *Wah* Court rejected the defendant's ineffective assistance claim because "in contrast to *Padilla*, counsel not only advised [the defendant] that there could be deportation consequences as a result of his plea, but also suggested that he seek the advice of an immigration attorney." *Id.* at 340. The *Wah* Court did not hold an extensive colloquy was required regarding potential immigration consequences. The *Wah* Court also did not address whether a single written statement was sufficient to comply with *Padilla*.

After careful consideration, the totality of the circumstances in the instant case warrants a remand to determine the merits of Appellant's claim and whether he was prejudiced, as set forth below. Instantly, unlike counsel in *Escobar*, *McDermitt*, and *Wah*, the record is silent as to whether Appellant's plea counsel advised Appellant beyond discussing the guilty plea

colloquy. *Cf. Escobar*, 70 A.3d at 840; *McDermitt*, 66 A.3d at 814; *Wah*, 42 A.3d at 340. Similar to the defendant in *Escobar*, however, Appellant was convicted of PWID and signed a written plea colloquy containing an entry that deportation was possible. *See* Guilty Plea Colloquy at 3; *cf. Escobar*, 70 A.3d at 840. But the *Escobar* Court rejected Appellant's argument that counsel was obligated to advise the defendant that he would actually be deported. *See Escobar*, 70 A.3d at 840-41. The *Escobar* Court, however, did not address whether a single written sentence was sufficient. The *McDermitt* Court similarly rejected Appellant's argument that counsel should advise the defendant "that he actually would be deported." *See McDermitt*, 66 A.3d at 814. *McDermitt*, however, like *Escobar*, did not address the sufficiency of a guilty plea colloquy. *Wah*, likewise, did not review the guilty plea colloquy given plea counsel's specific advice to consult with an immigration attorney. *See Wah*, 42 A.3d at 340.

In sum, to the extent Appellant argues that counsel should have advised him that he would be deported, this Court has repeatedly rejected that argument. *See Escobar*, 70 A.3d at 840; *McDermitt*, 66 A.3d at 814. But whether Appellant's plea counsel advised him he was deportable is an open question, notwithstanding the sole sentence in the guilty plea colloquy.[10] Given the absence of any evidentiary hearing, and because our

---

[10] We express no views on the weight that should be given to a single sentence within, or the entirety of, a guilty plea colloquy.

Supreme Court has expressed a strong preference to hear from PCRA counsel, **see Colavita**, 993 A.2d at 895, we believe it prudent to vacate and remand for an evidentiary hearing at which PCRA counsel can testify about the advice.

In support of his last issue, Appellant contends the affidavit of probable cause does not explain the six-month delay before his arrest. Appellant's Brief at 22-23. He asserts that the affidavit does not reflect how the affiant obtained the information that led to his arrest. **Id.** at 23. Appellant's argument, however, spans slightly more than one page, cites no law, and lacks legal analysis. Accordingly, we find it waived. **See Commonwealth v. Johnson**, 985 A.2d 915, 924 (Pa. 2009) (holding, "where an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."). The order below is affirmed with respect to Appellant's challenge to the affidavit of probable cause, affirmed as to Appellant's claim that counsel should have advised him that deportation was mandatory,[11] and vacated with respect to Appellant's challenge regarding whether counsel should have advised him about the deportation consequences regardless of the single sentence in a guilty plea colloquy.

---

[11] This holding presumes counsel did, in fact, provide advice.

Order affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/3/2016