J-S57025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SAMUEL RICE, | |
| Appellant | No. 2026 WDA 2015 |

Appeal from the PCRA Order December 2, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0001851-2011

BEFORE: FORD ELLIOTT, P.J.E., SHOGAN and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED OCTOBER 07, 2016**

Appellant, Samuel Rice, appeals from the order denying his petition for collateral relief filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-9546. We affirm.

A prior panel of this Court summarized the factual and procedural history of this case as follows:

> On January 26, 2011, Stephen Mackowski and Susan Selzer decided to rob Appellant, a drug dealer from whom Mackowski had previously purchased narcotics. Mackowski arranged to purchase a brick of heroin from Appellant and for the transaction to be consummated in a public parking lot. Mackowski placed items in the backseat of his car so that Appellant could not enter it during the drug transaction, and Selzer was located in the front passenger seat.

_____

[*] Retired Senior Judge assigned to the Superior Court.

Once Mackowski arrived at the designated location, Appellant approached the car and gave Mackowski the heroin. Mackowski handed the heroin to Selzer, ostensibly for her to inspect it, and Mackowski then started to drive away without paying Appellant for the drug. Appellant grabbed the window of the car, obtained his gun, and shot Mackowski, who died from his injuries, twice in the chest. Selzer removed the victim from the driver's seat, drove home, and then called an ambulance. There was an independent eyewitness to the shooting.

Appellant was charged with homicide, carrying an unlicensed firearm, reckless endangerment, and carrying a firearm by a prohibited person. The latter charge was subsequently withdrawn. The case proceeded to a jury trial, where a mistrial was granted on August [17], 2011. Appellant elected to plead guilty to all pending charges. Since Appellant pled guilty to homicide generally, the matter proceeded to a degree-of-guilt hearing. The trial court concluded that Appellant was guilty of third-degree murder.

Appellant was sentenced on December 7, 2011. The sentencing court had the benefit of a presentence report. Appellant had prior convictions for receiving stolen property and possession of two illegal guns. It sentenced Appellant to: 1) seventeen-and-one-half to thirty-five years for third-degree murder; 2) a consecutive term of incarceration of nine to eighteen months for carrying a firearm without a license; and 3) a concurrent term of six to twelve months for reckless endangerment.

At sentencing, the victim's family sought burial expenses but did not have documentation supporting the amount of those expenses. The court imposed restitution of one dollar, but indicated that it was going to conduct another hearing to alter the amount of restitution to allow the family to recover funeral expenses. Appellant filed a timely post-sentence motion to the December 7, 2011 judgment of sentence.[1] The trial court thereafter held a restitution hearing on January 5, 2012. At that time, the amount of restitution was increased to $8,873.05.

_____

[1] The trial court denied Appellant's post-sentence motion by order entered December 22, 2011.

*Commonwealth v. Rice*, 66 WDA 2012, 87 A.3d 891 (Pa. Super. filed October 24, 2013) (unpublished memorandum at 1-3).

Appellant filed a timely appeal on January 6, 2012. This Court affirmed Appellant's judgment of sentence on October 24, 2013. *Commonwealth v. Rice*, 66 WDA 2012, 87 A.3d 891 (Pa. Super. filed October 24, 2013).

Appellant filed a *pro se* PCRA petition on July 9, 2014. Counsel was appointed, and an amended PCRA petition was filed on March 31, 2015. The PCRA court issued a notice of intent to dismiss on November 6, 2015, and by order entered December 2, 2015, the PCRA court dismissed Appellant's petition without a hearing. Appellant timely appealed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents the following issues for our review:

I.    Is [Appellant's] claim for relief properly cognizable under the Post-Conviction Relief Act?

II.    Did the lower court err in dismissing the PCRA Petition without a hearing where [Appellant] presented a claim of ineffective assistance of counsel which contains arguable merit; specifically, counsel was ineffective for agreeing to stipulate to the prior trial testimony of key Commonwealth witnesses Kenneth Acrie and Suzan Selzer, thereby denying [Appellant] the rights guaranteed him by the Sixth and Fourteenth Amendments of the U.S. Constitution, and Article 1, Section 9 of Pennsylvania's Constitution?

Appellant's Brief at 5.

Our standard of review of an order denying PCRA relief is whether the record supports the PCRA court's determination and whether the PCRA court's determination is free of legal error. *Commonwealth v. Phillips*, 31 A.3d 317, 319 (Pa. Super. 2011) (citing *Commonwealth v. Berry*, 877 A.2d 479, 482 (Pa. Super. 2005)). The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record. *Id*. (citing *Commonwealth v. Carr*, 768 A.2d 1164, 1166 (Pa. Super. 2001)).

Furthermore, "[t]he right to an evidentiary hearing on a post-conviction petition is not absolute." *Commonwealth v. Walls*, 993 A.2d 289, 295 (Pa. Super. 2010).

> It is within the PCRA court's discretion to decline to hold a hearing if the petitioner's claim is patently frivolous and has no support either in the record or other evidence. It is the responsibility of the reviewing court on appeal to examine each issue raised in the PCRA petition in light of the record certified before it in order to determine if the PCRA court erred in its determination that there were no genuine issues of material fact in controversy and in denying relief without conducting an evidentiary hearing.

*Commonwealth v. Wah*, 42 A.3d 335, 338 (Pa. Super. 2012) (internal citation omitted).

In his first issue, Appellant asserts that he is eligible for relief under the PCRA. Appellant's Brief at 22. He contends that his petition was timely filed and that he is currently serving a sentence of imprisonment. *Id.* Appellant's petition challenges the effectiveness of counsel, and

- 4 -

ineffectiveness claims are cognizable under the PCRA. *Id.* Additionally, Appellant maintains that this issue has not been previously litigated nor has it been waived. *Id.* Thus, Appellant argues that his claim is cognizable under the PCRA. *Id.*

We agree with Appellant's assertion that his claim for relief is cognizable under the PCRA.[2] 42 Pa.C.S. §§ 9541-9546; *see also Commonwealth v. Lesko*, 15 A.3d 345, 361 (Pa. 2011) (outlining criteria for claims cognizable under the PCRA). Thus, we shall review the additional issue Appellant presents on appeal.

In his second issue, Appellant argues that the PCRA court erred in dismissing his petition without a hearing where Appellant established the merits of his claim that trial counsel was ineffective. Appellant's Brief at 32. Specifically, Appellant contends that counsel was ineffective for agreeing to stipulate at the degree-of-guilt hearing to the prior trial testimony of Commonwealth witnesses Kenneth Acrie and Suzan Selzer. *Id.* Appellant asserts that "[b]ecause trial counsel failed to subject the prosecution's case to meaningful, adversarial testing, [Appellant] was deprived of his confrontation rights as guaranteed by the federal and state constitutions." *Id.* at 25. Appellant further maintains that counsel was ineffective for stipulating to the prior trial testimony of Acrie and Selzer "insofar as he did

_____

[2] We note that there has been no suggestion by the Commonwealth or the PCRA court that Appellant's claim for relief is not cognizable under the PCRA.

not cross-examine Acrie at all during the trial, and his cross-examination of Selzer at trial did not touch upon the factual circumstances that became relevant during the degree-of-guilt hearing." *Id.* at 26. Appellant contends that trial counsel did not have a reasonable basis for depriving Appellant of his state and federal rights to confront and cross-examine adverse witnesses. *Id.* at 32. Moreover, Appellant asserts that he was prejudiced by counsel's failure to cross-examine these witnesses at the degree-of-guilt hearing. *Id.* Appellant posits that "there is a reasonable probability that but for counsel's error, [Appellant] would have been adjudged guilty of Voluntary Manslaughter instead of Third Degree Murder." *Id.* at 32-33.

When considering an allegation of ineffective assistance of counsel ("IAC"), counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable basis for his or her conduct; and (3) petitioner was prejudiced by counsel's action or omission. *Commonwealth v. Spotz*, 84 A.3d 294, 311 (Pa. 2014). "In order to meet the prejudice prong of the ineffectiveness standard, a defendant must show that there is a 'reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Commonwealth v. Reed*, 42 A.3d 314, 319 (Pa. Super. 2012). A claim of ineffective assistance of counsel will fail if the petitioner does not meet any one of the three prongs. *Commonwealth v. Simpson*, 66 A.3d 253, 260

(Pa. 2013). "The burden of proving ineffectiveness rests with Appellant."

***Commonwealth v. Rega***, 933 A.2d 997, 1018 (Pa. 2007).

The PCRA court provided the following analysis of Appellant's claim:

Even assuming, for the sake of argument, that [Appellant] could establish the first two (2) prongs of the [IAC] test, [Appellant] has failed to prove that he was actually prejudiced by counsel's stipulation because he cannot show that the stipulation could have reasonably had an adverse effect on the outcome of the proceedings.

With respect to Mr. Acrie's testimony, [Appellant] argues that counsel failed to conduct any cross examination into "the conditions under which Acrie purportedly made his observations – the short period of time that elapsed during the incident, the limited view in his rearview mirror as he was driving away, that he couldn't have seen [Appellant's] hands at all, and the fact that he didn't actually see a shooting." [Appellant] also argues that counsel failed to "address the inconsistencies in Acrie's testimony as to the order in which the events transpired, and whether [Appellant] was being dragged along, or was hanging onto the car."

Contrary to [Appellant's] assertions, counsel's stipulation to Mr. Acrie's testimony did not prejudice [Appellant]:

First, with respect to the issue of counsel's decision not to cross-examine Mr. Acrie regarding his observations, the court notes that Mr. Acrie was candid about the circumstances surrounding his observations, and at no point during his direct examination did he suggest that he had a perfect, unobstructed, and continuous view of the encounter. To the contrary, Mr. Acrie admitted that he could not identify the shooter or the individuals in the car, that he observed what he believed to be a shooting from the rear-view mirror of his vehicle as he was still driving, and that he could not see any object in the shooter's hands. These factors all weighed in [Appellant's] favor. Accordingly, since the weaknesses in Mr. Acrie's view were clearly established through his direct examination, Counsel's

strategic decision to forego cross-examination and stipulate to his testimony at the Hearing was inconsequential.

Furthermore, this court was well-familiar with the limitations of Mr. Acrie's observations since it presided over the trial and paid careful attention to the testimony presented. This court specifically took into account the circumstances surrounding Mr. Acrie's view of the incident in making its credibility determinations and rendering its verdict at the Hearing.

Second, notwithstanding Mr. Acrie's view of the incident, Mr. Acrie testified credibly and confidently that he *heard* a screeching of the vehicle and *then heard* the shots being fired. Mr. Acrie's testimony regarding this sequence of events was entirely consistent with Mrs. Selzer's testimony. Mrs. Selzer testified that, before any shots were fired, the car had already stopped moving in a forward direction.

Finally, the fact that counsel did not question Mr. Acrie as to whether [Appellant] was hanging on to the vehicle or was being dragged is immaterial given that Mr. Acrie testified at numerous points that it looked like the individual was being "dragged" along by the car because the vehicle was moving too fast for the individual to have been running with the car. Moreover, [Appellant] took the stand at the Hearing and insisted that he was being dragged along by the vehicle and was not voluntarily hanging on to the vehicle throughout the entire incident. The court notes that, in rendering its verdict, it gave [Appellant] the benefit of the doubt and accepted that [Appellant] had, *at one point*, been dragged along by the vehicle *prior* to the vehicle stopping its forward motion. Accordingly, the issue of whether [Appellant] was dragged by the vehicle is a moot point, and counsel's lack of inquiry into that issue did not prejudice [Appellant] in any way.

With respect to Mrs. Selzer's testimony, [Appellant] argues that counsel "failed to address the inconsistencies in her version

of the events" and "did not ask for the details on the order of events, or the timing and nature of [Appellant's] actions."

Contrary to [Appellant's] contention, counsel conducted a thorough and lengthy cross-examination of Mrs. Selzer at trial. Counsel questioned her regarding inconsistencies in her testimony, the sequence of events, [Appellant's] conduct, and her bias and motive to lie. Thus, the introduction of Mrs. Selzer's trial testimony at the Hearing did not prejudice [Appellant] because the facts relevant to the court's determination of culpability with respect to her testimony had already been established at trial.

Against this backdrop, the court finds that counsel's stipulation to the testimony of Mr. Acrie and Mrs. Selzer at the Hearing did not actually prejudice [Appellant] because there is no reasonable probability that the live testimony of these witnesses would have led this court to reach a different verdict at the Hearing. The court had ample opportunity to assess the reliability and credibility of these witnesses and the court was well-aware of any discrepancies in the witness testimony. However, it was the duty of this court, as the fact-finder, to resolve those discrepancies, and a fact-finder is entitled to believe all, part, or none of a witness' testimony.

Notice of Intent to Dismiss, 11/6/15, at 3-6 (emphasis in original) (internal paragraph numbering and citations omitted).

The PCRA court's analysis is supported by the evidence of record. We agree with the PCRA court's conclusion that Appellant has failed to establish that he was prejudiced by counsel's decision to stipulate at the degree-of-guilt hearing to the witnesses' trial testimony. Because Appellant has failed to establish that he suffered prejudice as a result of counsel's actions, his IAC claim fails. **See Rega**, 933 A.2d at 1018 ("a failure to satisfy any prong of the ineffectiveness test requires rejection of the claim."). Moreover, because there were no genuine issues concerning any material fact, the

PCRA court was not required to conduct a hearing prior to dismissing Appellant's petition. **Wah**, 42 A.3d at 338.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2016