J-S84028-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
PAUL BURKE :
:
Appellant : No. 377 EDA 2018

Appeal from the PCRA Order January 18, 2018
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000264-2014

BEFORE: BENDER, P.J.E., OTT, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY OTT, J.: **FILED JULY 02, 2019**

Paul Burke appeals from the order entered January 18, 2018, in the Court of Common Pleas of Pike County, that denied, after a hearing, his first petition filed pursuant to the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.[1] Burke seeks relief from the judgment of sentence to serve an aggregate term of eight and one-half to 17 years' incarceration. Burke contends trial counsel was ineffective for failing to impeach the complainant-victim with her prior inconsistent statement. After a thorough review of the submissions by the parties, relevant law, and the certified record, we find the issue waived for failure to provide this Court with an adequate record. Therefore, we affirm the PCRA court's order.

---

[1] There is no question that this PCRA petition has been timely filed. Accordingly, we see no particular need to recite the well-known and often repeated statutory requirement for filing a timely PCRA petition. **See** 42 Pa.C.S. § 9545(b)(1)-(4).

The facts of this case were summarized by this Court in Burke's direct

appeal:

> The record reflects that in the early morning hours of May 5, 2014, appellant's wife, the victim, got out of bed, took her dog out, and proceeded to make coffee when appellant began calling for her. (Notes of testimony, 11/12/14 at 37.) When the victim went to the bedroom, appellant complained that "[e]verybody hates him." (*Id.*) When the victim tried to comfort him, he reached for a muscle relaxant, and the victim called him a "baby" for doing so. (*Id.* at 38.) Appellant angrily responded, "[H]ow dare you say that to me," and threw the pill bottle at the victim. He then told the victim that he wanted to end his life because no one likes him and that "everybody can go on with their happy old life" without him. (*Id.* at 39.) The victim testified that at this point, she became somewhat aggravated and told appellant that she "really [doesn't] have a life with [appellant.]" (*Id.*)
>
> Appellant then "flew off the bed," "flipped two heaters," and "with both fists started pounding [the victim] in every direction." (*Id.* at 39-40.) Appellant began the assault by punching the victim in the face with closed fists. The victim was unable to count how many times appellant punched her in the face with closed fists, but estimated "ten whatever." (*Id.* at 40.) At that point, the victim ripped appellant's shirt "by accident" when she attempted to get away from him. (*Id.* at 41.) The victim testified that this upset appellant because he said it was his "best New York [] shirt." (*Id.*) Appellant then "head-butted" the victim, ripped open both shirts that she was wearing, and choked her. (**Id.** at 41, 44.) The victim then felt warm blood coming down into her bra. (*Id.* at 41.) The victim testified that during this incident, she was on the floor in the fetal position attempting to block appellant from striking her, at which time appellant repeatedly struck the right side of her torso, down to her right kidney. (*Id.* at 43.)
>
> At this point, appellant got up, left the bedroom, and then returned with a 12-inch chef's knife. (*Id.* at 41, 52.) As the victim was on the floor, appellant stood over her, raised the knife high above her, and stated that he was going to kill the victim, their children, and his parents. (*Id.* at 42.) Appellant then lowered the knife to within 3 inches of the victim's heart. (*Id.* at 53.) The victim then told appellant to "just go." (*Id.* at 42.) He then put

the knife down and retreated. (*Id.*) The victim managed to leave the residence and drive to the police station. (*Id.* at 45.) Police called an ambulance, which transported the victim to a hospital. (*Id.* at 62, 96.) The victim suffered a fractured nose and multiple abrasions, lacerations, and bruises to her face, neck, and torso. (*Id.* at 48-52.)

\*\*\*\*

… [A]ppellant took the stand in his own defense. Appellant testified that while he was in bed that morning, and for reasons unknown to him, the victim grabbed and ripped his shirt while simultaneously calling him an "S.O.B." (Notes of testimony, 11/13/14 at 23-25.) Because appellant was "mad that she grabbed [his] shirt," appellant grabbed the victim's shirt and ripped it intentionally. (*Id.* at 25-26.) At that point, according to appellant, the victim fell backwards off the bed while appellant was "attached to her," and the two "collided on the floor." (*Id.* at 30.) Appellant claimed that during this collision, a fan fell over and hit the victim in the face and "put a mark on her cheek." (*Id.* at 35.) Appellant denied striking the victim's face and again claimed that the victim's facial injuries were caused by the falling fan. (*Id.* at 36.)

Appellant further explained that a zipper on the victim's shirt caused the injuries to the victim's neck. (*Id.* at 43-44.) Appellant denied choking the victim. (*Id.* at 51.) He also denied striking her 20 to 30 times with closed fists. (*Id.*) Appellant further denied holding a chef's knife over the victim and threatening to kill her and other family members. (*Id.* at 51-52.) Appellant only admitted to grabbing and ripping the victim's shirt. (*Id.* at 52.)

Appellant further testified that the lumps on the victim's head were caused when the fan and "other items" fell. (*Id.* at 71.) He stated that the bruises on the victim's torso were "probably" caused when he and the victim "fell on the shoes," and that the bruise on the victim's lower back was caused "when she fell off the bed onto a pile of shoes and tapes." (*Id.* at 73.)

*Commonwealth v. Burke*, 159 A.3d 40 (Pa. Super. 2016) (unpublished memorandum, at 1-3; 5-6). A jury convicted Burke of aggravated assault,

terroristic threats, simple assault, recklessly endangering another person, and harassment.[2] Following the denial of post sentence motions, Burke filed an unsuccessful direct appeal. *Id.* Burke did not seek further review by the Pennsylvania Supreme Court.

On May 22, 2017, Burke filed a timely PCRA petition. Counsel was appointed, an amended petition was filed and after several delays, an evidentiary hearing was held on September 29, 2017. On January 17, 2018, the PCRA court denied Burke relief. This timely appeal followed.[3] In this appeal, Burke raises a single claim that the PCRA court erred in failing to find trial counsel was ineffective for failure to cross-examine the complaining witness regarding a prior allegedly inconsistent statement. Specifically, Burke claims that his wife, the victim, testified at trial that he manually choked her, while she never told the police this in any of her prior written statements. Further, in her written statements, she mentioned in the course of the assault, "Heaters and movies and a fan went flying across the room." Written Statement to the Police, 5/5/2014, at 1. However, her trial testimony failed to convey these allegations. Because the victim's credibility was such a central part of the Commonwealth's case, Burke asserted the failure to challenge the victim on these points led to his conviction.

---

[2] 18 Pa.C.S. §§ 2702(a)(1), 2706(a)(1), 2701(a)(2), 2705, and 2709(a)(1), respectively.

[3] This appeal suffered through several delays as well, including a dismissal for failure to file an Appellant's brief.

- 4 -

Initially,

Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error. ***Commonwealth v. Conway***, 14 A.3d 101 (Pa. Super. 2011), *appeal denied*, 612 Pa. 687, 29 A.3d 795 (2011).This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. ***Commonwealth v. Boyd***, 923 A.2d 513 (Pa. Super. 2007), *appeal denied*, 593 Pa. 754, 932 A.2d 74 (2007). We give no such deference, however, to the court's legal conclusions. ***Commonwealth v. Ford***, 44 A.3d 1190 (Pa. Super. 2012). Further, a petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact, the petitioner is not entitled to relief, and no purpose would be served by any further proceedings. ***Commonwealth v. Wah***, 42 A.3d 335 (Pa. Super. 2012).

The law presumes counsel has rendered effective assistance. ***Commonwealth v. Williams***, 597 Pa. 109, 950 A.2d 294 (2008). When asserting a claim of ineffective assistance of counsel, the petitioner is required to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his action or inaction; and, (3) but for the errors and omissions of counsel, there is a reasonable probability that the outcome of the proceedings would have been different. ***Commonwealth v. Kimball***, 555 Pa. 299, 724 A.2d 326 (1999). The failure to satisfy any prong of the test for ineffectiveness will cause the claim to fail. ***Williams***, ***supra***.

***Commonwealth v. Bickerstaff***, 204 A.3d 988, 992 (Pa. Super. 2019)

The PCRA court determined Burke suffered no prejudice from the failure to cross-examine the victim regarding these points as

the dissimilarities or omissions that [Burke] takes issue with are not substantial enough to cast doubt on the victim's testimony. The inconsistency from her previous statements regarding [Burke] choking her and the fan do not cast great doubt on her testimony, which otherwise went into great detail about the events. Even though the written statements were signed and endorsed by the

victim, they were not formal witness examinations. Furthermore, we would note that the discrepancies and omissions in her trial testimony are not substantial in the context of the otherwise overwhelming evidence of [Burke's] guilt as contained in the trial record. As in **Luster**,[4] a cross-examination by trial counsel regarding discrepancies in the victim's testimony would not have been outcome-determinative based on the entire trial record.

Trial Court Opinion, 4/2/2018 at 4-5.

Moreover, the PCRA court also determined that trial counsel conducted a lengthy and vigorous cross-examination of the victim that did raise several questions regarding the victim's prior statements. Additionally, at the PCRA hearing, trial counsel testified he did not want to admit the statements into evidence, as they would simply tend to bolster her trial testimony. Trial Court Opinion, 1/17/2018, at 4.[5] Accordingly, the PCRA court determined trial counsel had a reasonable strategic basis for his actions. **Id.** at 5. This determination, by itself, serves to negate Burke's claims of ineffective assistance of counsel.

However, we are incapable of conducting a proper review of the PCRA court's finding because Burke has failed to supply our Court with a copy of the notes of testimony from the PCRA hearing. We find no evidence in the certified record currently before us that Burke ordered those notes of testimony be

---

[4] **Commonwealth v. Luster**, 71 A.3d 1029, 1043 (Pa. Super. 2013) ("[m]ere dissimilarities or omissions in prior statements…do not suffice as impeaching evidence; the dissimilarities or omissions must be substantial enough to cast doubt on a witness's testimony to be admissible as prior inconsistent statements.")

[5] The January 17, 2018 Order and Opinion came from the initial denial of Burke's PCRA petition. The April 2, 2018 Opinion was written for this appeal.

transcribed. It is the appellant's duty to make certain that the certified record

contains all appropriate information required for the appellate court to conduct

its review. The failure to do so results in the waiver of the claim.

> This Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record. **Commonwealth v. O'Black**, 897 A.2d 1234, 1240 ([Pa. Super.] 2006). This requirement is not a mere "technicality" nor is this a question of whether we are empowered to complain *sua sponte* of *lacunae* in the record. In the absence of an adequate certified record, there is no support for an appellant's arguments and, thus, there is no basis on which relief could be granted.
>
> The certified record consists of the "original papers and exhibits filed in the lower court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the lower court." Pa.R.A.P. 1921. Our law is unequivocal that the responsibility rests upon the appellant to ensure that the record certified on appeal is complete in the sense that it contains all of the materials necessary for the reviewing court to perform its duty. **Commonwealth v. Kleinicke**, 895 A.2d 562, 575 (Pa. Super. 2006) (*en banc*). To facilitate an appellant's ability to comply with this requirement, our Supreme Court adopted the following procedural rule effective as of June 1, 2004:
>
>> The clerk of the lower court shall, at the time of the transmittal of the record to the appellate court, mail a copy of the list of record documents to all counsel of record, or if unrepresented by counsel, to the parties at the address they have provided to the clerk. The clerk shall note on the docket the giving of such notice.
>
> Pa.R.A.P. 1931(d). As the explanatory comment to Rule 1931 indicates, if counsel (or a party) discovers that anything material has been omitted from the certified record, the omission can be corrected pursuant to the provisions of Rule of Appellate Procedure 1926. Under Rule 1926, an appellate court may direct that an omission or misstatement shall be corrected through the filing of a supplemental certified record. However, this does not alter the fact that the ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts. Pa.R.A.P. 1931.

> With regard to missing transcripts, the Rules of Appellate Procedure require an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal. Pa.R.A.P. 1911(a). If a cross-appeal has been taken, the cross-appellant shares the duty to order and pay for the necessary transcripts. Pa.R.A.P. 1911(b). When the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review. [**Commonwealth v.**] **Williams**, 715 A.2d [1101] at 1105 [(Pa. 1998)]. It is not proper for either the Pennsylvania Supreme Court or the Superior Court to order transcripts nor is it the responsibility of the appellate courts to obtain the necessary transcripts. **Id**.

**Commonwealth v. Preston**, 904 A.2d 1, 7 (Pa. Super. 2006).

Because the certified record does not contain the notes of testimony from the PCRA hearing, we cannot review the dispositive finding by the PCRA court. Accordingly, the claim is waived.[6]

Order affirmed.

_____

[6] The PCRA court also determined that, pursuant to **Commonwealth v. Luster**, **supra**, trial counsel's failure to cross-examine the complaining witness regarding having been choked did not entitle Burke to relief. The PCRA court found that based on the otherwise overwhelming evidence presented, the failure to question the witness regarding what she originally reported to the police was not substantial enough to have been "outcome-determinative." **See** Trial Court Opinion, 4/2/2018, at 5. Because of our resolution of this matter, we need not formally review this finding. However, based upon our independent review of the certified record, we see no error in the PCRA court's determination.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/2/19