J-S62017-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                    :              PENNSYLVANIA
                                      :

                    v.                    :
                                      :
                                      :

EZRA BOZEMAN                       :
                                      :

             Appellant           :       No. 240 WDA 2019

Appeal from the PCRA Order Entered, January 15, 2019,
in the Court of Common Pleas of Allegheny County,
Criminal Division at No(s):  CP-02-CR-0003632-1975.

BEFORE:  PANELLA, P.J., KUNSELMAN, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY KUNSELMAN, J.:        **FILED DECEMBER 20, 2019**

Ezra Bozeman appeals *pro se* from the order that denied as untimely his eighth petition filed pursuant to the Post Conviction Relief Act (PCRA).  42 Pa.C.S.A.  §§ 9541-46.  We affirm.

The PCRA court summarized the pertinent facts as follows:

> [Bozeman] was convicted of second-degree murder in the shooting death of Morris Weitz during an attempted robbery at the Highland Cleaners in the Highland Park neighborhood section of Pittsburgh on January 3, 1975.  One of the witnesses who testified against Bozeman at trial was Thomas Durrett.  Durrett testified that he was friends with Bozeman for about three months prior to the shooting. Durrett testified that in the early afternoon on the day of the shooting, Bozeman came to Durrett's apartment, which he shared with Gregory Clark, and they discussed making some money by selling some marijuana that Bozeman had at Peabody High School.  After smoking some marijuana, Bozeman and Durrett drove to the Peabody High School area and parked their car and were walking toward the school when Bozeman stated that "We're going to rob the

cleaners." Durrett told Bozeman he did not want to be involved and Durrett walked into the next door pizza shop. Durrett ordered some pizza and spoke to some friends and as he walked out of the pizza shop Durrett could see into the cleaner's shop where he could see Bozeman in a confrontation with a man behind the counter. He then saw Bozeman step back and he then heard two gunshots and saw Bozeman pointing a dark colored revolver at the man behind the counter. He then saw Bozeman run out of the cleaners. Frightened, Durrett ran back to his apartment. Minutes later Bozeman also returned to the apartment. Durrett confronted Bozeman and said, "Don't you know you killed a man?" Bozeman responded that, "He wouldn't cough up the money, so I took him out of here." Bozeman then threatened [Durrett] that he would be "taken care of" if he talked about the shooting. [Durrett] was arrested and charged with the robbery and murder in April of 1975 but didn't tell police about what he had witnessed until the day of his inquest. The charges against him were then dismissed.

At trial, Gregory Clark, who [] also knew Bozeman and shared the apartment with Durrett, also testified that Bozeman came to their apartment the morning of the shooting and that there was discussion about selling marijuana. He testified that they smoked some marijuana together and then Bozeman and Durrett left the apartment. While they were gone, another man, Gaylord Veney, arrived at the apartment looking for Durrett. They talked until Durrett returned to the apartment about 15 to 20 minutes after Gaylord arrived. When he returned, Durrett looked dazed. Bozeman returned minutes later and Durrett and Bozeman went to Durrett's bedroom. Shortly thereafter, Clark went into Durrett's bedroom with Durrett and Bozeman at which point Bozeman stated that he "shot someone." Bozeman then stated that if there were any repercussions from the conversation, "someone would get hurt."

Gaylord Veney, who also knew Bozeman, testified that he was a guard on a cigarette truck and as part of his job he wore a uniform and carried a gun. He testified that he went to Durrett's apartment on the day of the shooting but Durrett was not there but Clark let him in and he was only there for a few minutes when Durrett returned. He said that

Durrett looked "depressed" but didn't say what was wrong. About five minutes later, Bozeman returned and Durrett and Bozeman went to the kitchen, and Veney, while standing 10 to 15 feet away, heard Durrett say to Bozeman, "Do you realize you killed a man?" Bozeman responded, "I asked the guy for the money and he wouldn't cough it up, so I took him away from there." Veney moved to another part of the room but then turned and saw a dark blue steel revolver in Bozeman's hand. Bozeman then asked Veney if he had 2 extra bullets and Veney told him that he had to account for all his bullets at work. Bozeman then opened the revolver and dropped two empty shell casings into his hand. Veney later heard Bozeman tell Durrett "that if anything about what happened had got out, that he would be taken care of."

PCRA Court Opinion, 6/27/19, at 3-5 (citation omitted).

Based on the above facts, the jury convicted Bozeman of second-degree murder on October 16, 1975. Three days later, the trial court sentenced him to life in prison. Bozeman filed a direct appeal to our Supreme Court, which was denied on January 28, 1977.

Thereafter, Bozeman began his quest for post-conviction relief. In denying Bozeman's seventh such attempt, we summarized the lengthy procedural history, and discussed the claims he raised on appeal as follows:

By our count, Bozeman has filed a direct appeal, six prior PCRA petitions, two prior federal habeas corpus petitions, and one prior Mandamus action. None of these petitions has provided Bozeman with any relief.

In this PCRA petition, Bozeman has argued that he was never formally charged and therefore the trial court was without jurisdiction to try him. Additionally, he claims to have recently discovered proof that the only eyewitness against him testified because of favorable treatment he received. Finally, he claims that recent United Supreme Court's decision in *Miller v. Alabama*, 132 S.Ct. 2455 (2012), mandates he be resentenced.

- 3 -

The PCRA court determined Bozeman's petition was untimely and dismissed the petition without a hearing.

*Commonwealth v. Bozeman*, 96 A.3d 1085 (Pa. Super. 2014) (unpublished memorandum) (footnote omitted).

Before addressing the substance of that appeal, this Court first determined the timeliness of his seventh petition. After discussing the applicable provisions of the PCRA, in conjunction with pertinent case law, we determined that, because Bozeman failed to prove any exception to the PCRA's time bar, the PCRA court properly dismissed it as untimely. We first determined that Bozeman's jurisdiction claim did not invoke any of the timeliness exceptions. *See Bozeman*, unpublished memorandum at 5. While we recognized that in Bozeman's second claim he attempted to raise a claim of newly discovered evidence regarding Commonwealth witness, Thomas Durrett, we found the claim to fail because Bozeman did not demonstrate due diligence in discovering this evidence. *Id.* at 5-6. Finally, Bozeman's *Miller v. Alabama* argument failed because Bozeman admitted that he was not a juvenile at the time he committed the murder. *Id.* at 7. On June 4, 2014, our Supreme Court denied Bozeman's petition for allowance of appeal. *Commonwealth v. Bozeman*, 93 A.3d 461 (Pa. 2014).

On July 7, 2017, Bozeman filed the PCRA petition at issue, his eighth. The PCRA court appointed counsel, and PCRA counsel filed a petition to withdraw and a "no-merit" letter pursuant to *Commonwealth v. Turner*, 544 A.2d 927 (Pa. 1988), and *Commonwealth v. Finley*, 550 A.2d 213 (Pa.

Super. 1988) (*en banc*). On December 17, 2018, the PCRA court issued Pa.R.Crim.P. 907 notice of its intention to dismiss Bozeman's PCRA petition as untimely and permitted PCRA counsel to withdraw. Bozeman filed a response. By order entered January 15, 2019, the PCRA court dismissed Bozeman's PCRA petition. This appeal followed. Both Bozeman and the PCRA court have complied with Pa.R.A.P. 1925.

Bozeman's statement of questions presented consists of seven numbered paragraphs, some of which did not raise any issue. **See** Bozeman's Brief at 9-11. In essence, Bozeman raises the following two issues: 1) a claim that the trial court lacked jurisdiction to try him because he was never given notice of the crimes for which he was being held for trial; and 2) a claim of newly-discovered evidence in the form of a recantation by Thomas Durrett.

This Court's standard of review regarding an order dismissing a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. **Commonwealth v. Garcia**, 23 A.3d 1059, 1061 (Pa. Super. 2011). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Wah**, 42 A.3d 335, 338 (Pa. Super. 2012).

Before addressing the merits of Bozeman's issues, we again must first determine whether Bozeman's serial PCRA petition was untimely filed.

The timeliness of a post-conviction petition is jurisdictional. **Commonwealth v. Hernandez**, 79 A.3d 649, 651 (Pa. Super. 2013).

Generally, a petition for relief under the PCRA, including a second or subsequent petition, must be filed within one year of the date the judgment becomes final unless the petition alleges, and the petitioner proves, that an exception to the time for filing the petition, set forth at 42 Pa.C.S.A. sections 9545(b)(1)(i), (ii), and (iii), is met.[1]  42 Pa.C.S.A. § 9545.  A PCRA petition invoking one of these statutory exceptions must "be filed within 60 days of the date the claim could have been presented."  *See Hernandez*, 79 A.3d 651-52 (citations omitted); *see also* 42 Pa.C.S.A. § 9545(b)(2).[2]  Finally, exceptions to the PCRA's time bar must be pled in the petition, and may not

_____

[1] The exceptions to the timeliness requirement are:

> (i) the failure to raise the claim previously was the result of interference of government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States.
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. §§ 9545(b)(1)(i), (ii), and (iii)

[2] Our legislature recently amended this section of the PCRA to provide petitioners one year to file a petition invoking a time-bar exception.  *See* Act of 2018, October 24, P.L. 894, No. 146.  This amendment does not apply to Bozeman's serial petition.

be raised for the first time on appeal. ***Commonwealth v. Burton***, 936 A.2d 521, 525 (Pa. Super. 2007); ***see also*** Pa.R.A.P. 302(a) (providing that issues not raised before the lower court are waived and cannot be raised for the first time on appeal).

Here, as this Court noted in denying Bozeman's seventh PCRA petition, Bozeman's serial petition was patently untimely:

> The Pennsylvania Supreme Court denied Bozeman's direct appeal, without comment, on January 28, 1977. ***Commonwealth v. Bozeman***, 367 A.2d 1089 (Pa. 1977). Therefore, Bozeman's judgment of sentence became final 90 days thereafter, when the time allowance to file an appeal to the United States Supreme Court expired. ***See*** 42 Pa.C.S. § 9545(b)(3); former U.S.Sup.Ct.R. 22. ***See also Commonwealth v. Williamson***, 21 A.3d 236, 241 (Pa. Super. 2011) (judgment of sentence becomes final 90 days [from] Pennsylvania Supreme Court final order, after period for filing writ of certiorari with United States Supreme Court expired). Therefore, on or about April 28, 1977, Bozeman's judgment of sentence became final.

> Pursuant to statute 42 Pa.C.S. § 9545(b)(1), Bozeman had one year from the date his judgment of sentence became final to file his PCRA petition. ***See*** [***Commonwealth v. Taylor***, 933 A.2d 1035 (Pa. Super. 2007)]. The instant petition was not filed until August 21, 2012. Facially, this petition is approximately 34 years too late.

***Bozeman***, unpublished memorandum at 3-4 (footnote omitted).

For these same reasons, Bozeman's eighth petition if facially untimely by almost forty years, unless Bozeman has satisfied his burden of pleading and proving that one of the enumerated exceptions applies. ***See Hernandez***, ***supra***.

We previously rejected Bozeman's claim regarding jurisdiction to try him because it did not invoke any of the timeliness exceptions. *See supra*. The same applies to Bozeman's first issue—therefore it is both meritless and previously litigated under the PCRA. *See generally*, 42 Pa.C.S.A. § 9544(a).

Bozeman's second issue involves the latest reiteration of his claim of newly discovered evidence involving Commonwealth witness, Thomas Durrett. In his seventh PCRA petition, Bozeman claimed that he had recently discovered that "Durrett testified as the result of a deal with the Commonwealth, a fact that was denied throughout the trial." *Bozeman*, unpublished memorandum at 5. As noted above, we determined that Bozeman's attempt to meet the PCRA's time-bar exception failed because he did not establish that he exercised due diligence in discovering this information. *See id.* at 6-7.

In his eighth PCRA petition, Bozeman now asserts he recently learned that Durrett recanted some of his trial testimony. According to Bozeman, this "newly-discovered fact" entitles him to post-conviction relief in the form of a new trial.

With this claim, Bozeman attempts to establish the PCRA's timeliness exception found at section 9545(b)(1)(ii).

> The timeliness exception set forth in Section 9545(b)(1)(ii) requires a petitioner to demonstrate he did not know the facts upon which he based his petition and could not have learned of those facts earlier by the exercise of due diligence. Due diligence demands that the petitioner take reasonable steps to protect his own interests. A petitioner must explain why he could not have learned the

new fact(s) earlier with the exercise of due diligence. This rule is strictly enforced. Additionally, the focus of this exception is on the newly discovered facts, not on a newly discovered or newly willing source for previously known facts.

The timeliness exception set forth at Section 9545(b)(1)(ii) has often mistakenly been referred to as the "after-discovered evidence" exception. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, an initial jurisdictional threshold, Section 9545(b)(1)(ii) requires a petitioner to allege and prove that there were facts unknown to him and that he exercised due diligence in discovering those facts. Once jurisdiction is established, a PCRA petitioner can present a substantive after-discovered evidence claim.

*Commonwealth v. Brown*, 111 A.3d 171, 176 (Pa. Super. 2015) (citations omitted).

In support of his claim, Bozeman attached a May 9, 2017 letter from Zach Stern, a staff investigator for the Pennsylvania Innocence Project at Temple University Beasley School of Law. Stern's letter to Bozeman relayed the following information he allegedly received in an interview with Durrett:

On Monday, May 1, 2017, I interviewed Thomas Durrett at his home located at 7500 Upland St in Pittsburgh, PA. Mr. Durrett told me on the day of the murder, he saw you walk into Highland Cleaners as he was in the pizza shop across the street. He did not see you touch anyone or threaten anyone. He also denies you told him you planned to rob Highland Cleaners. Durrett then saw other people walk into the Cleaners as well. Very soon after, he heard gunshots. He then looked at the Cleaners and saw you along with many other people running out of the Cleaners. He said he thought you may have been holding something as you ran out, but you may not have been, and he honestly didn't know if you had a gun.

After the shooting, Mr. Durrett denies ever having a conversation with you where you confessed to the murder, or threatened to get rid of anyone who would snitch on you. He denied the possibility of Clark or Vesey [sic] being able to overhear any conversation of the sort.

Unfortunately, by the end of the interview, Mr. Durrett expressed a lot of anger towards you and stated that he did not want to talk about this anymore. He then stormed off and slammed the door, concluding the interview.

On Wednesday, May 3, 2017, I interviewed Gregory Clark by telephone. I had left a card at his address, and he called me back. Mr. Clark refused to discuss his memory of the case, other than he recalls there being a robbery and a man killed. He continually said he could not help you, but would not explain why. I tried to get more information as to what this unhelpful information was, but Clark refused to share. I then finally concluded the interview.

Finally, on May 1, 2017, I spoke with Gaylord Vesey's [sic] ex-wife, who informed me of Mr. Vesey's [sic] death in January 2017.

*See* PCRA Petition, 7/17/17 at Exhibit # 3.

Here, the PCRA court did not hold an evidentiary hearing and did not first conduct a timeliness analysis as Bozeman's newly discovered evidence claim. Rather, the PCRA court directly addressed Bozeman's claim as an after-discovered evidence claim and found it to be meritless. ***See Brown***, ***supra***. We need not remand for this initial determination at this time because there is no record evidence that Bozeman knew of Durrett's alleged recantation before he received the Zach Stern letter. In addition, Bozeman filed his eighth PCRA petition within sixty days of receiving the letter. Thus, we review the PCRA court's determination that Bozeman cannot establish his claim of after discovered evidence.

To address this issue, we first note the test applied to after-discovered evidence. When discussing the test in the context of a PCRA appeal, our Supreme Court recently summarized:

> [W]e have viewed this analysis in criminal cases as comprising four distinct requirements, each of which, if unproven by the petitioner, is fatal to the request for a new trial. As stated, the four-part test requires the petitioner to demonstrate the new evidence: (1) could not have been obtained prior to the conclusion of trial by the exercise of reasonable diligence; (2) is not merely corroborative or cumulative; (3) will not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. The test applies with full force to claims arising under Section 9543(a)(2)(vi) of the PCRA. In addition, we have held the proposed new evidence must be producible and admissible.

*Commonwealth v. Small*, 189 A.3d 961, 972 (Pa. 2018) (citations omitted).

Here, the PCRA court first noted that the proffered evidence "must be assessed in the context of all the evidence in the case. PCRA Court Opinion, 6/27/19, at 8 (citing *Commonwealth v. Johnson*, 966 A.2d 523 (Pa. 2009)). The PCRA court than compared the statements Durrett allegedly made to Bozeman's staff investigator, Zach Stern, with Durrett's testimony at trial. The court then noted that, because the contents of the letter constituted, at most, only a "partial recantation," Bozeman could not establish the fourth prong of the *Small* test—that the new evidence "would likely result in a different verdict if a new trial were granted." *Small*, *supra*. The PCRA court explained:

> Durrett's statement, however, does not contradict other important testimony from the trial and, in fact, confirms

- 11 -

certain key facts that implicate Bozeman in the shooting. There is no contradiction of the testimony that Bozeman and Durrett wanted to get some money that morning and planned on going to the high school to sell marijuana. On the way to the high school, Durrett confirms that he went into the pizza shop and Bozeman went to the cleaners. He confirms Bozeman's presence in the [cleaners] at the time of the shooting and that [Bozeman] ran from the shop after the shooting. The statement also confirms that [Bozeman] was seen holding something as he ran from the [cleaners] even if Durrett could not confirm that it was a gun. In addition, portions of Durrett's statement are directly contradicted by other witnesses who testified at trial. Gregory Clark and Gaylord Veney, both of whom testified at trial, confirmed Bozeman's statements admitting that he shot the victim because he would not hand over money and threatening them if anyone talked. In addition, Veney's trial testimony was that he saw Bozeman with a gun after the shooting and that Bozeman removed two empty shell casing[s] from the gun, which is consistent with the number of times the victim was shot, remains uncontradicted.

\*\*\*

Taking into consideration that record as a whole, the statement of [Durrett] does not qualify as after discovered evidence. Assuming that Durrett would have testified or that his statements were otherwise admissible, the variations in his testimony do not undermine the confidence in the trial verdict. The verdict against [Bozeman] did not rest solely on the testimony of Durrett and those portions of his statement that varied from his trial testimony were either not critical to the conviction or that testimony was provided by other witnesses.

PCRA Court Opinion, 6/27/19, at 10-12.

Our review of the record supports the PCRA court's conclusion that the contents of the letter failed to meet the *Small* criteria, and, therefore, did not warrant a new trial. In addition, we note that Bozeman's claim also fails because his proffered after-discovered evidence was not "producible and

admissible." ***Small***, ***supra***.  Initially, we note that Stern's summary of what Durrett allegedly ***told him*** is clearly inadmissible hearsay.  ***See Commonwealth v. Yarris***, 731 A.2d 581, 592 (Pa. 1999) (explaining and after-discovered evidence claim "which rests exclusively upon inadmissible hearsay is not of a type" that would warrant a new trial).[3]  In addition, given Stern's description of how his interview with Durrett ended, there is every indication that Durrett's alleged recantation testimony would not be "producible." ***Small***, ***supra***.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  12/20/2019

_____

[3] In a footnote, the PCRA court acknowledged that, in his ***Turner***/***Finley*** letter, PCRA counsel analyzed the admissibility of Durrett's statement under the hearsay rules.  PCRA Court Opinion, at 11 n.2.

[4] Indeed, the PCRA court acknowledged PCRA counsel's averment that Durrett died on May 21, 2018.