J-A15042-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AMOS Z BENKA COKER | : | |
| | : | |
| Appellant | : | No. 1236 MDA 2023 |

Appeal from the PCRA Order Entered August 22, 2023
In the Court of Common Pleas of Luzerne County Criminal Division at
No(s):  CP-40-CR-0004115-2019

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                **FILED: OCTOBER 3, 2024**

Appellant, Amos Z. Benka Coker appeals from the order entered in the Court of Common Pleas of Luzerne County denying relief on his first petition filed pursuant to the Post Conviction Relief Act ("PCRA").  After careful review, we affirm.

The PCRA court's Pa.R.A.P. 1925(a) opinion sets forth an apt summary of pertinent facts and procedural history, as follows:

> On December 10, 2019, the Commonwealth filed a Criminal Information which charged the Appellant with two (2) counts of possession with intent to deliver a controlled substance, 35 Pa. § 780-113(A)(30), criminal use of a communication facility, 18 Pa.C.S.A. § 7512(a), and related offenses.  (Criminal Information 12/10/19).  On April 6, 2021, the Appellant appeared before the [trial] court offering to plead guilty to count one (1), PWID-crack cocaine.  After conducting a colloquy of the Appellant on the record [the trial court] accepted his guilty plea. (N.T. 4/6/2021).

---

[*] Former Justice specially assigned to the Superior Court.

The Appellant appeared before the [trial] court for sentencing on October 14, 2021.[fn] [The trial court] reviewed the presentencing investigation (PSI) report, considered the arguments of counsel, and the allocution of the Appellant prior to fashioning his sentence. Thereafter, we sentenced the Appellant within the standard range of the sentencing guidelines to a term of incarceration for not less than twelve (12) months but not more than thirty (3) months. (N.T. 10/14/2021 pg. 5-6). No post-sentence motion or direct appeal was filed.

---

Fn    The Appellant failed to appear for his previously scheduled sentencing and a bench warrant was issued. Appellant was apprehended on the bench warrant in September of 2021, and his sentencing was scheduled for October 14, 2021.

---

On October 24, 2022, Appellant, acting *pro se*, filed a post-conviction relief act (PCRA) petition which alleged that counsel failed to adequately advise him about his risk of deportation consequent to his plea. Appellant was deported to Sierra Leone, Africa.

[The PCRA Court] appointed counsel to represent the Appellant and provided his counsel with an opportunity to file a supplementary PCRA petition. Counsel filed a supplementary PCRA petition on February 27, 2023, and we scheduled an evidentiary hearing. On August 22, 2023, the Appellant appeared before the court via video from Africa. His court appointed counsel was present in the courtroom. Relevantly, the Appellant testified that his plea counsel represented to him that he would be given a home confinement sentence and that his plea would not result in deportation. He testified that he was deported when he was paroled and that he would not have pleaded guilty to the offenses but for his counsel's misrepresentations. (N.T. PCRA hearing, 8/22/2023, pp. 4, 6, 13-14).

The Appellant's plea counsel[, Attorney Theron Solomon,] testified also. He denied advising the Appellant that he would be sentenced to home confinement. (N.T. at pp. 22, 24). Attorney Solomon had contemporaneous notes and correspondence of his plea discussions with Appellant which did not include any promise of home confinement. (N.T. at p. 22). Plea counsel also

acknowledged making the statement to the [guilty plea] court that his client was not deportable ([*See*] N.T. Plea 4/7/2021, at p. 2). However, he also testified that he made that representation to the court based upon information given to him by the Appellant. (N.T. PCRA hearing, 8/22/2023, at pp. 19-21).

[The PCRA court] denied the Appellant relief, finding that his testimony was not credible. Accordingly, he failed to prove that he was prejudiced.

The Appellant, through his counsel, filed a timely notice of appeal. His counsel filed a concise statement which alleged that [the PCRA court] erred by denying his PCRA petition.

PCRA Court Opinion, 11/16/2023, at 1-3.

Appellant presents the following questions for this Court's consideration:

1. Did the trial court err in failing to grant the Appellant leave to withdraw his plea where his plea of guilt to the subject crime was unlawfully induced through ineffective assistance, under ***Padilla v. Kentucky***, 130 S.Ct. 1472 (2010), where the record does not support that trial counsel provided advice concerning the consequences and, as a result, the plea was not voluntarily, intelligently and knowingly tendered?

2. Did the trial court err in failing to grant the Appellant leave to withdraw his plea where trial counsel provided less than competent assistance by incorrectly leading him to believe that he would receive, in exchange for his plea, either house arrest or probation, thus unlawfully inducing the Appellant to plead guilty and rendering his plea unconstitutionally?

Brief of Appellant, at 4.

This Court's standard of review regarding an order denying a petition under the PCRA is whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. ***Commonwealth v. Turetsky,*** 925 A.2d 876, 879 (Pa. Super. 2007). The PCRA court's findings of fact will not be disturbed unless there is no support for the findings in the

certified record. ***Commonwealth v. Wah***, 42 A.3d 335, 338 (Pa. Super. 2012).

When a petitioner claims they have received ineffective assistance of counsel, relief will only be granted with a showing, by a preponderance of the evidence, that:

> his conviction or sentence resulted from the [i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner. To obtain relief, a petitioner must demonstrate that counsel's performance was deficient and that the deficiency prejudiced the petitioner. **A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different**. …. [A] properly pled claim of ineffectiveness posits that: (1) the underlying legal issue has arguable merit; (2) counsel's actions lacked an objective reasonable basis; and (3) actual prejudice befell the petitioner from counsel's act or omission.

> ***Commonwealth v. Johnson***, 600 Pa. 329, 966 A.2d 523, 532-33 (2009) (citations and quotation marks omitted) (emphasis added); ***see also Strickland v. Washington***, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); ***Commonwealth v. Pierce***, 515 Pa. 153, 527 A.2d 973, 975 (1987) (adopting ***Strickland***). Moreover, if any of the three prongs are not satisfied, the entire claim fails. ***Commonwealth v. Jones***, 942 A.2d 903, 906 (Pa. Super. 2008) (citation omitted).

Our Supreme Court has long held:

- 4 -

> Allegations of ineffectiveness in connection with the entry of a guilty plea will serve as a basis for relief only if the ineffectiveness caused [an a]ppellant to enter an involuntary or unknowing plea. In determining whether a guilty plea was entered knowingly and intelligently, a reviewing court must review all of the circumstances surrounding the entry of that plea.

*Commonwealth v. Mitchell*, 629 Pa. 572, 105 A.3d 1257, 1272 (2014) (citations omitted). Generally, entry of a guilty plea waives all claims and defenses as to the validity of the plea. *See, e.g.*, *Commonwealth v. Jabbie*, 200 A.3d 500, 505 (Pa. Super. 2018). Additionally, "a defendant is bound by the statements [that] he makes during his plea colloquy." *Id.* at 506 (citation omitted). However, "[w]here the defendant enters his plea on the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *[] Wah*, 42 A.3d [at] 338-39 [] (quotation marks and citation omitted). This Court further addressed the expectations of counsel in *Commonwealth v. McDermitt*, 66 A.3d 810 (Pa. Super. 2013), stating "*Padilla* [*v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010),] requires counsel to inform a defendant as to a risk of deportation[.]" *Id.* at 814.

In *Padilla*, the United States Supreme Court analyzed the unique issue of the risk of deportation as a consequence of a criminal conviction. The *Padilla* Court stated:

> We have long recognized that deportation is a particularly severe "penalty," [ ] but it is not, in a strict sense, a criminal sanction. Although removal proceedings are civil in nature, deportation is nevertheless intimately related to the criminal process. ... And, importantly, recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders. Thus, we find it "most difficult" to divorce the penalty from the conviction in the deportation context. [ ]
>
> Deportation as a consequence of a criminal conviction is, because of its close connection to the criminal

- 5 -

process, uniquely difficult to classify as either a direct or a collateral consequence. The collateral versus direct distinction is thus ill suited to evaluating a **Strickland** claim concerning the specific risk of deportation. We conclude that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. **Strickland** applies to Padilla's claim.

*Id.* at 365-66, 130 S.Ct. 1473 (internal citations omitted).

The **Padilla** Court further set out the obligation of a defense attorney regarding a client entering a guilty plea:

Immigration law can be complex, and it is a legal specialty of its own. Some members of the bar who represent clients facing criminal charges, in either state or federal court or both, may not be well versed in it. There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. The duty of the private practitioner in such cases is more limited. When the law is not succinct and straightforward [ ], a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, ... the duty to give correct advice is equally clear.

*Id.* at 369, 130 S.Ct. 1473 (footnote omitted). The Court concluded, "counsel must inform her client whether his plea carries a risk of deportation. Our longstanding Sixth Amendment precedents, the seriousness of deportation as a consequence of a criminal plea, and the concomitant impact of deportation on families living lawfully in this country demand no less." *Id.* at 374, 130 S.Ct. 1473.

*Commonwealth v. Ramirez-Contreras*, --- A.3d----, 2024 WL 3589230

(Pa. Super. filed July 31, 2024).

In ***Ramirez-Contreras***, this Court reversed the PCRA court's denial of an ineffectiveness claim and vacated a guilty plea where the guilty plea documents and proceedings asked no questions of the defendant's citizenship and failed to raise immigration or deportation concerns, where the defendant exhibited no knowledge that a guilty plea would impact immigration, and where plea counsel demonstrated no effort to ascertain the defendant's citizenship status or deportation risk. Under such facts, we determined there was arguable merit to the defendant's ineffective assistance of plea counsel claim that counsel had induced a guilty plea that was not entered knowingly, voluntarily, and intelligently. ***Id.*** at *6.

In the case *sub judice*, the guilty plea colloquy of Appellant reveals that the trial court *sua sponte* questioned his citizenship status based on its recollection of his criminal case history, and Appellant responded with a lie:

**Trial Court:** Are you a United States citizen?

**Defendant:** Yes.

**Trial Court:** Didn't you have an issue in the past with your citizenship?

**Defendant:** Yeah. I did had [sic] an issue in the past.

**[Counsel]:** They determined he was non-deportable, that he was a citizen.

**Trial Court:** Okay. I remember having a case before where-

**[Counsel:]** There was an issue that we dealt with.

**Trial Court:** Because if you weren't, then you'd be facing immigration issues and possible deportation. Do you understand that?

**Defendant:** Yeah, I'm aware of it.

**Trial Court:** And you've discussed and reviewed all of this with your attorney?

**Defendant:** Yeah, perfect.

. . .

**Trial Court:** Is anybody forcing you or threatening you or promising you anything to plead guilty today?

**Defendant:** No.

**Trial Court:** Do you have any questions of me or is there anything you don't understand about what you're pleading to?

**Defendant:** No. I understand everything.

**Trial Court:** Knowing all your rights and the possible consequences, do you still wish to plead guilty today?

**Defendant:** Yes.

N.T. Guilty Plea Colloquy, 4/7/21, at 3-4, 5.

At the PCRA hearing, moreover, Appellant admitted that he lied about his citizenship status at the guilty plea hearing, but he attempted to place accountability for his doing so on plea counsel:

**Commonwealth:** . . . . What I'm asking is at that time [of the guilty plea], on April 7, 2021, you're claiming that you said you were a United States citizen because Attorney Solomon said that you wouldn't be deported.

. . .

Let me try to break it down a little bit. You stated under oath in court that you were a United states citizen, that you were a citizen of the United States. Would you agree with me that you did state that?

**Appellant:** Yes. Because my [guilty plea] lawyer told me that I was fine to say that. That's what I did.

**Commonwealth:** Okay. But at that time, you knew you were not a United States citizen. Would you agree with me?

**Appellant:** Yes, I agree.

**Commonwealth:** So, you said that anyway knowing you were not a United States citizen?

**Appellant:** 'Cause my lawyer told me to do that. That's why I said that. He said it was fine.

**Commonwealth:** And you would agree with me you knew you were not a United States citizen because you had previously been taken into custody by ICE [in 2012 or 2013] after you entered a guilty plea to pretty much the same offense. Would you agree with me on that?

**Appellant:** Yes. But I didn't want to take that [2012] guilty plea. My [prior] attorney forced me to do that.

**Commonwealth:** I'm not asking if you wanted to take it or not. I'm asking if you did, in fact, enter a guilty plea back in 2012 or 2013? Did you enter a guilty plea to a felony drug offense at that time?

**Appellant:** I did. [Attorney] Palissary, that was my attorney. It's been so long. I don't really remember.

**Commonwealth:** And I think you just testified under questioning from your PCRA counsel that, in fact, you did. And at that case, would you agree with me that as a result of your guilty plea, they instituted deportation proceedings for the case where you had Attorney Palissary?

**Appellant:** Yes. The deportation proceeding was issued after, I think like a year after the [2012] guilty plea.

**Commonwealth:** And it was because you entered a guilty plea to a felony drug offense; correct?

**Appellant:** Yes.

**Commonwealth:** And when those deportation proceedings began, you filed a PCRA petition; is that correct?

**Appellant:** Yes.

**Commonwealth:** And your guilty plea, you were allowed to withdraw that guilty plea due to [your receiving lack of notice of the risk of] deportation for pleading guilty to a felony drug offense; correct?

**Appellant:** Yes.

**Commonwealth:** So, after you went through that experience, we'll fast forward to 2021. Between that time [2012-2013] and 2021, did you become a United States citizen?

**Appellant:** I filed to be a naturalized citizen. My application was in process.

**Commonwealth:** You filed it, but did you become a naturalized citizen?

**Appellant:** No.

**Commonwealth:** Yet, in April of 2021, knowing that previously you had entered a guilty plea to a felony drug offense, and knowing that as a result of that, you were under deportation proceedings, and knowing that you had not yet been granted citizenship, you entered a guilty plea to a felony drug offense. Would you agree with me?

**Appellant:** Yeah. I took the plea.

**Commonwealth:** And that's the proceeding where, again, you told the court that you were a United States citizen although you knew you were not?

**Appellant:** Yes. Because of my lawyer. That's another thing I'm telling you. The lawyer telling me that he did research, that I'll be fine.

N.T. (PCRA Hearing), 8/22/23, at 8-10.

Plea counsel took the stand and addressed Appellant's accusations as well as the issue of Appellant's citizenship as he understood it from the time he was retained on the night of Appellant's arrest to the date of Appellant's guilty plea. According to plea counsel, despite "dozens" of meetings with Appellant prior to the preliminary hearing, which had been continued numerous times, he maintained that he first learned of a potential immigration status and deportation issue during his preliminary hearing negotiations with the attorney from the Attorney General's office, who indicated Appellant would not receive bail because he had an immigration detainer N.T. at 16-17.

Plea counsel testified that Appellant assured him that the immigration issue that had applied to his earlier cases was "resolved" when it was learned his mother had attained citizenship before he was eighteen years old, which, consequently, conferred on him the status of a naturalized citizen at that time. N.T. at 19, 20. Nevertheless, plea counsel maintained, he did not rest on Appellant's assurance but sought to verify this information by contacting the Luzerne County Prison to confirm that there was no immigration detainer on Appellant before he waived the preliminary hearing for bail. Thereafter, he negotiated with the Commonwealth to combine the two cases and secure one bail, which was set at $100,000. N.T. at 19-20.

Therefore, plea counsel summarized, he relied not only on Appellant's assurances but also on his own inquires that revealed there was "no immigration at the jail, there was no detainer, he was able to bail out, he was never picked up, the case drug [sic] on for over two years, he never had any

- 11 -

immigration issues[]" prior to his pleading guilty. N.T. at 21. The next time the issue of immigration came up between himself and Appellant, he testified, was during the guilty plea colloquy when Judge Lupas asked in open court about Appellant's status based on the judge's knowledge of Appellant's criminal court history, and Appellant denied being a foreign citizen. N.T. at 21.

Herein, Appellant counters plea counsel's testimony with that of his own. Specifically, he argues in his brief that plea counsel failed in his duty under *Padilla* and its progeny to give correct advice regarding the risk of deportation if he pleaded guilty, as "Mr. Coker maintained . . . that he believed that he was non-deportable . . . and based on trial counsel's advising him that he knew everything about Mr. Coker's past and engaged in research, Mr. Coker relied on trial counsel's advice that there was nothing to worry about." Brief of Appellant at 19. He continues, "Trial counsel's advice, having advised Mr. Coker that he was non-deportable, led him to believe that his deportation status was similar to or equated with being a citizen." *Id*.

The PCRA court, however, deemed Appellant's testimony incredible and plea counsel's testimony credible on this dispositive aspect of the representation. Its opinion underscores how Appellant understood completely at the 2021 guilty plea hearing that the PWID charges in the present matter placed him at risk of deportation. To this end, the opinion not only recounts Judge Lupas' cautionary instruction to Appellant during the plea colloquy that if Appellant were not a United States citizen then his guilty plea could result

in his deportation, but it also points to both Appellant's prior criminal history—in which he experienced how similar felony PWID charges triggered deportation proceedings against him[1]—and the knowing misrepresentations about his citizenship that he made to plea counsel and to Judge Lupas in an apparent effort to evade possible deportation proceedings, as further evidence that he understood the deportation risks of his pleading guilty in the case *sub judice*.[2]

As the record shows, therefore, the present facts are readily distinguishable from those in ***Ramirez-Contreras*** and the decisional law upon which it relied. Unlike the defendant in ***Ramirez-Contreras***, Appellant knew at his guilty plea hearing that a conviction on his felony PWID charge would expose him to deportation proceedings if he were not a United States citizen. As discussed, *supra*, both his prior experience with deportation

---

[1] In 2013 (Luzerne County docket numbers 1824 and 3922 of 2010), deportation proceedings had commenced against Appellant following his guilty plea to PWID, and they were discontinued only because Appellant prevailed in a PCRA petition raising an ineffective assistance of counsel claim that plea counsel failed to ensure Appellant was advised of potential deportation consequences that applied to him as a foreign national. Furthermore, in two subsequent Luzerne County cases docketed in 2014 and 2021, respectively, Appellant acknowledged he was not a United States citizen and that his plea and conviction in those cases could result in deportation.

[2] On this point, the PCRA court aptly found instructive ***Commonwealth v. Brown***, 363 A.2d 1249, 1253 (Pa. Super. 1976), which observed, "A criminal defendant who elects to plead guilty has a duty to answer questions truthfully. We cannot permit a defendant to postpone the final disposition of his case by lying to the court and later alleging that his lies were induced by the prompting [or ineffectiveness] of counsel."

proceedings on a similar felony PWID charge and the guilty plea court's direct admonition to him about the risk of deportation in this case if he were not a United States citizen placed him on notice of this risk.

Further differentiating this case from precedent relied upon by Appellant is that plea counsel broached the topic of Appellant's immigration status with him as part of his preparations for the guilty plea hearing, and Appellant knowingly misled counsel about such status and remained silent when counsel had reached the wrong conclusion about it. Indeed, the PCRA court found credible plea counsel's testimony, which was supported by counsel's contemporaneous notes, that he recommended accepting the Commonwealth's plea offer only after his own investigation-based inferences about Appellant's immigration status had aligned with Appellant's false representation to him that he had been accorded naturalized citizenship status. The PCRA court determined that it was Appellant's aim to conceal his foreign citizenship from plea counsel and the plea court in the hope that it simply would be overlooked.

Because the record supports the PCRA court's findings of fact, we may not disturb them on appeal. *Wah*, 42 A.3d at 338. We conclude, therefore, that Appellant failed to meet his burden of proof as to any of the arguable merit prong and the prejudice prong of the ineffective assistance of counsel claim he levels against plea counsel in his first issue.

In Appellant's second issue, he contends that the trial court erred in failing to grant him leave to withdraw his plea where trial counsel ineffectively led him to believe that he would receive, in exchange for his plea, either house arrest or probation, thus inducing an unlawful plea. To the extent we may

- 14 -

view this claim as primarily one alleging ineffective assistance of plea counsel and, thus, properly raised herein, we observe that it suffers the same fate as Appellant's first claim, as it asks this Court to do what it may not do, which is to reassess the PCRA court's credibility determination of Appellant's and plea counsel's respective testimonies. **See Wah**, **supra**. At the PCRA hearing, plea counsel testified that he made no such misleading statement related to, or promise of, a sentence limited to house arrest or probation, N.T., 8/22/23, at 22, and the PCRA court found this testimony credible. **See** PCRA Court Opinion, 11/16/23, at 9-10. Accordingly, we perceive no basis upon which Appellant may prevail on this claim.

For the foregoing reasons, the PCRA court did not err in dismissing Appellant's petition, as he clearly is not entitled to relief on the grounds alleged.

Order affirmed.


Judgment Entered.


Benjamin D. Kohler, Esq.
Prothonotary


Date: 10/3/2024